[S. F. No. 17343. In Bank. June 3, 1948.]

EDNA GREENFIELD et al., as Administrators with the Will Annexed, etc., Plaintiffs, v. A. W. MATHER, Respondent; DOROTHY DEVORE MATHER et al., Appellants.

Don Lake and James R. Jaffray for Appellants.

Marcel E. Cerf, Robinson & Leland and Henry Robinson for Respondent.

CARTER, J.—The appeal here involved is from a judgment in an action of interpleader commenced by the administrators of the estate of Louis R. Greenfield in the Superior Court of the City and County of San Francisco on April 12, 1935. At the time this action was commenced said administrators deposited with the clerk of said court the sum of $12,549.60 admittedly due on an allowed claim presented against said estate by A. W. Mather, respondent herein. The appellant and respondent herein were named as defendants in said action, and each filed an answer and cross-complaint in the court below in which they claimed ownership of the sum of money deposited by said administrators in said court. A former appeal in this action was decided by this court on August 3, 1939 (see *Greenfield* v. *Mather*, 14 Cal.2d 228 [93 P.2d 100]).

The record now before us discloses that: On June 16, 1933, A. W. Mather, cross-defendant and respondent herein, assigned to his then wife, Dorothy Devore Mather, cross-complainant and appellant herein, an undivided one-half interest in and to a claim against the estate of Greenfield, pending in the Superior Court of the City and County of San Francisco, the principal sum of which was approximately $75,000. At the date of the assignment there was admittedly unpaid on said claim the sum of $38,699. After this assignment was executed and delivered, Mrs. Mather gave notice thereof to the administrators of the Greenfield estate. Thereafter said administrators paid Mr. Mather the following amounts:

| | |
|---|---|
| September 5, 1933 | $ 7,441.00 |
| January 1, 1934 | $ 5,881.00 |
| March 2, 1934 | $ 6,327.50 |
| July 24, 1934 | $ 6,919.55 |

making a total paid to A. W. Mather of......$26,569.05 *after the execution of the assignment.* Said administrators also paid to Mrs. Mather the sum of $7,441 on September 5, 1933.

She has received no other payment on account of her half of said claim. In addition to the principal of $38,699 due on said claim at the time of the assignment, interest accrued thereon amounting to the sum of $7,560.65, making a total of principal and interest of $46,259.65, of which Mr. and Mrs. Mather were each entitled to one-half or $23,129.82. Mr. Mather has received $26,569.05, or $3,439.23 more than his share. Mrs. Mather has received only $7,441, or $15,688.82 less than her share. These figures are taken from the record in this case, and their correctness is not questioned by the respondent. In fact, counsel for respondent state in their petition for hearing in this court in this case at page 52 thereof: ''We have never examined the probate file, or the vouchers, and made and make no representations in regard to its contents.'' This statement should foreclose counsel for respondent from attacking the correctness of the above figures as the record discloses they were taken from said file.

At the trial of this action respondent A. W. Mather offered in evidence a judgment entered in an action in the Superior Court of Los Angeles County on March 29, 1945, which action was commenced by him against appellant in said court on August 3, 1934. This judgment purported to award one-half of the said sum of $12,549.60 on deposit in the Superior Court of the City and County of San Francisco to respondent and the other half to appellant. The trial court admitted the judgment in evidence, held it to be res judicata, refused to admit any evidence offered by appellant, and rendered judgment awarding respondent one-half of the above-mentioned sum and the other half to appellant. This appeal followed.

To understand the background of this litigation a review of the proceedings in the Los Angeles action is necessary. The Los Angeles action was commenced by Mr. Mather on August 3, 1934. It pleaded three causes of action. The first cause of action was for rescission of a property settlement agreement entered into between himself and Mrs. Mather on June 16, 1933, upon the ground that it was induced by false representations and fraud. The second cause of action was for rescission of the same agreement upon the ground of mistake. The third cause of action was for declaratory relief, by which he sought to have the same agreement declared void upon the ground of illegality because it was entered into between a husband and wife in the Territory of Hawaii contrary to the laws of that territory. The administrators of the Green-

field estate were joined as defendants, and the complaint prayed for the issuance of an injunction restraining them from making any further payments to Mrs. Mather on account of her half interest in the claim which had been assigned to her. A restraining order was issued and served on said administrators, and they filed an answer in the nature of a disclaimer in which they admitted that they held the sum of $12,549.60 unpaid on said claim. This answer was not served on Mrs. Mather and she filed no pleading raising any issue with respect to the sum mentioned in said answer.

Mrs. Mather interposed a demurrer to the complaint filed by Mr. Mather which was sustained without leave to amend as to the third cause of action, and judgment was entered on January 4, 1935, decreeing that plaintiff take nothing by said third cause of action. The demurrer as to the first and second causes of action was overruled. The case went to trial on these causes of action on February 18, 1935, and judgment was entered as to those causes of action on March 14, 1935, denying Mr. Mather any relief. Mr. Mather appealed from the judgment of January 4, 1935, and this appeal was dismissed on the ground that said judgment was not a final judgment. (See *Mather* v. *Mather,* 5 Cal.2d 617 [55 P.2d 1174].) He attempted to appeal from the judgment entered March 14, 1935, on the first and second causes of action, but this appeal was dismissed on September 10, 1935, for failure to file transcript. In the opinion of this court in *Mather* v. *Mather,* 5 Cal. 2d 617 [55 P.2d 1174], the statement is made that: ''It is at once apparent that no final judgment was entered in the action until March 14, 1935.''

Mr. Mather had filed an answer and cross-complaint in the interpleader action in San Francisco in which he raised the same issues as to the validity of the property settlement agreement as were raised by his third cause of action in the Los Angeles action. In this cross-complaint he attacked the validity of the assignment to Mrs. Mather of the half interest in the claim against the Greenfield estate and contended that such assignment was invalid and void for the same reason that the property settlement agreement was invalid. Mrs. Mather joined issue with him by answer and cross-complaint in which she denied the allegations of his cross-complaint and pleaded her right to the ownership of the half interest in the claim assigned to her.

After the dismissal of the appeals from the two Los Angeles judgments, the San Francisco action came to trial and Mrs.

Mather's counsel offered in evidence a certified copy of the judgments of January 4th and March 14, 1935, in the Los Angeles action and objected to any evidence being offered by Mr. Mather in support of the allegations of his cross-complaint on the ground that the issues raised by these allegations were determined in the Los Angeles action and that the judgments of January 4th and March 14, 1935, were res judicata. The trial court sustained the objection and thereupon entered judgment in favor of Mrs. Mather awarding to her the full amount of the money deposited by the administrators of the Greenfield estate in the interpleader action as constituting the balance of her half of the claim pursuant to the assignment. On appeal to this court by Mr. Mather, this judgment was reversed upon the ground that the Los Angeles judgments were not final judgments. (See *Greenfield* v. *Mather*, 14 Cal. 2d 228 [93 P.2d 100].)

The attorneys for Mrs. Mather then went into the Superior Court of Los Angeles County and moved for a new judgment in that action. The motion was heard before Judge Clarence M. Hanson who adopted the findings made by Judge Frank M. Smith on March 12, 1935, to the effect that Mrs. Mather was the *owner of an undivided half interest in the claim against the Greenfield estate and entered a judgment awarding her the full sum of $12,549.60 which had been deposited in the Superior Court of the City and County of San Francisco* in the interpleader action brought by the administrators of the Greenfield estate. This judgment was entered on December 12, 1939. Mr. Mather appealed from this judgment upon the ground that it was void because it was entered without notice and that the judge who heard the motion and signed the new judgment had not presided at the trial (which was held on February 18, 1935, before Judge Frank M. Smith), *and that the findings and judgment determined issues which were not before the court, namely, the right of Mrs. Mather to the $12,549.60 deposited with the Superior Court of the City and County of San Francisco by the administrators of the Greenfield estate in the interpleader action instituted by them.* Their argument in this respect was based upon the fact that the administrators of the Greenfield estate were dismissed as parties to the Los Angeles action by stipulation of the parties to said action on June 4, 1936, and that thereafter there could be no issue in the Los Angeles action relative to the disposition of the sum of $12,549.60 on deposit in the Superior Court of

the City and County of San Francisco, and that any issue in regard to the disposition of this fund must be determined in the action pending in the last mentioned court. On pages 26 and 27 of appellant's opening brief in that case counsel for Mr. Mather state: ''Not only are there new and additional findings, there are new and additional provisions *in the judgment,* not based upon any previous order for judgment or any previous conclusions of law. These new and additional provisions include in their operation the co-defendants, estate of Greenfield, Edna Greenfield, administratrix, Herman Wobber and Hugo D. Keil, administrators thereof. *This new portion of the judgment orders these co-defendants to pay the sum of $12,549.60 to Dorothy Devore Mather co-defendant and respondent.* (Cl. Tr. p. 160, lines 14-19.) *There was no such provision in the previous judgment entered on March 14, 1935, or in the conclusions of law filed on that date.* (Cl. Tr. pp. 151, 154.) *Consequently, the new judgment is void. . . .*

''The procurement of this new provision in the judgment is both an imposition on the co-defendants and appellants against whom it is directed, and upon the judge. It orders the doing of an act which is impossible. *The same money is now in the hands of the Court in the San Francisco action.* (See *supra,* p. 4.) *Furthermore, the procurement of this judgment is in direct disregard of respondents' later stipulation that the same money be deposited with the Court in the San Francisco action, and discharging the Estate of Greenfield and the administrators thereof of liability to either A. W. Mather, appellant herein, or to Dorothy Devore Mather, respondent herein and in whose favor the new judgment is rendered.* The estate and the administrators were not only discharged from liability by stipulation of this same Dorothy Devore Mather, dated June 4, 1936, but pursuant to such stipulation, an order of Court was entered to the same effect on June 5, 1936, more than three years before the entry of the judgment on December 12, 1939. (See *supra,* p. 5, see also, stipulation and order thereon in *Greenfield* v. *Mather,* at Cl. Tr. p. 59, lines 12-20 therein.)'' [Emphasis added.]

In their reply brief filed by counsel for Mr. Mather in the District Court of Appeal, Second Appellate District, on February 3, 1942, in support of his appeal from the judgment of December 12, 1939, in the Los Angeles action, counsel state at pages 42 and 43: ''But even if we were so charitably inclined as to permit respondents to call this new and different matter in the third judgment 'surplusage', the record would

not permit it, because the new judgment, in respect to the direction to pay the money to Mrs. Mather, is directly contrary to the recitals in the second judgment and in the original findings. The second judgment recites that: '. . . Messrs. Lorrin Andrews and Sidney Snyder appearing as attorneys for plaintiff and Messrs. Don Lake and James R. Jaffray for defendants Anna Inez Mather and Lessie G. Williams, the other defendants not being represented in court, *no relief being demanded against said other defendants, who were made parties for the purpose of asking for restraining delivery to defendant Anna Inez Mather of certain moneys and properties mentioned in the complaint, which restraint was effectuated by the issuance of a temporary injunction in said action;'* (Cl. Tr. p. 153, lines 16-25; Italics ours.)

"An identical recital was made in the findings of fact. (Cl. Tr. p. 133, lines 16-25.) Consequently, the record shows *affirmatively* that all that was sought as to Estate of Greenfield was a restraint during the pendency of the action, and that this relief was accomplished by a temporary injunction, which 'was dissolved February 27, 1935' (Cl. Tr. p. 151, line 20), which dissolution was confirmed in the second judgment. (Cl. Tr. p. 154, line 11.) *On the face of the record, all the relief that was sought against the Greenfield Estate was obtained, and the Estate was in effect dismissed from the case on February 27, 1935, when the restraint was dissolved, and most certainly so when this dissolution was confirmed in the second judgment.*" [Emphasis added.]

There can be no question that it was the position of counsel for Mr. Mather on the appeal from the judgment of December 12, 1939, in the Los Angeles action which terminated in the decision of *Mather* v. *Mather,* 22 Cal.2d 713 [140 P.2d 808], that the all-important question as to who was entitled to the sum of $12,549.60 on deposit in the Superior Court of the City and County of San Francisco in the interpleader action, must be determined by a judgment in the interpleader action. However, this court reversed the judgment of December 12, 1939, in the Los Angeles action on the ground that Mrs. Mather's counsel failed to give sufficient notice to counsel for Mr. Mather of their motion for entry of said judgment (*Mather* v. *Mather,* 22 Cal.2d 713 [140 P.2d 808]). At page 718 of its opinion in said case this court states: "The judgment, being based upon a finding that Anna Inez Mather was the owner of *one-half of the claim* against the Greenfield estate, is erroneous in adjudging her to be the owner of the *whole of*

*said claim.* Such condition of the record precludes affirmance of the judgment as a proper termination of this litigation.'' [Emphasis added.]

It is obvious that the court was led into a misapprehension as to the difference between *a half interest* in the claim and *half of the unpaid balance* of the claim, as the opinion states: ''The judgment being based upon a finding that Anna Inez Mather was the owner of *one-half of the claim* against the Greenfield estate, is erroneous in adjudging her to be the owner of the whole of said claim.'' [Emphasis added.] This misconception is apparent when we refer to the finding made by Judge Hanson on which the judgment of December 12, 1939, was based, which determines that Mrs. Mather is the owner of an undivided one-half interest in said claim. This finding is in accord with all of the pleadings and decisions in the case. The confusion arose in assuming that the $12,549.60 on deposit in the Superior Court of the City and County of San Francisco which was awarded to Mrs. Mather in said judgment, constituted *the whole claim,* and was undoubtedly due to the fact that no evidence was offered in the Los Angeles action relative to the payments received by Mr. and Mrs. Mather on their respective half interests in the claim which would have disclosed that Mr. Mather had already received more than his share. Of course such evidence would not have been relevant or material in the Los Angeles action because the amount which the respective parties were entitled to receive as their respective shares of the claim was not an issue in that case. It must necessarily follow that the above-quoted erroneous statement from the opinion of this court, 22 Cal.2d 713, is mere dictum because it was not within the issues in that case and therefore could not have been determined either by the trial court or this court.

After the decision of this court in *Mather* v. *Mather,* 22 Cal.2d 713 [140 P.2d 808], reversing the judgment of December 12, 1939, Mrs. Mather's attorneys went into the Superior Court of Los Angeles County, and after obtaining an order expunging the judgments of January 4th and March 14, 1935, they moved for a judgment on the merits based upon the findings made by Judge Frank M. Smith in support of the judgment entered by him on March 14, 1935. These motions were made before Judge Frank M. Smith, and on November 1, 1943, he signed a judgment which determined all of the issues in the Los Angeles action in favor of Mrs. Mather. This judgment was entered on November 1, 1943, and simply provided

that plaintiff A. W. Mather take nothing by reason of his complaint; that the temporary injunction theretofore issued restraining the administrators of the Greenfield estate from making any further payments to Mrs. Mather on her half interest in the claim against said estate be dissolved; and that Mrs. Mather recover her costs. No mention was made therein with respect to the disposition of the $12,549.60 on deposit in the Superior Court of the City and County of San Francisco in the interpleader action instituted by the administrators of the Greenfield estate. Mr. Mather appealed from this judgment and it was reversed by this court in *Mather* v. *Mather,* 25 Cal.2d 582 [154 P.2d 684]. It would appear that this court held in that decision that Mrs. Mather was entitled to *only one-half of the $12,549.60* on deposit in the Superior Court of the City and County of San Francisco in the interpleader action instituted by the administrators of the Greenfield estate as distinguished from *one-half* of the *whole claim* against the Greenfield estate which, as above shown, was the phraseology used in the decision in 22 Cal.2d 713. It is clear that the opinion filed by this court at that time (25 Cal.2d 582) is based upon the misconception that there was an issue in the Los Angelees action relative to the respective interests of Mr. and Mrs. Mather in this *fund,* as the only issue in that action was whether or not the property settlement agreement, and incidentally the assignment executed by Mr. Mather pursuant to said agreement, was valid. This assignment dated June 16, 1933, transferred to Mrs. Mather an undivided one-half interest in the unpaid balance of the approved claim of Mr. Mather against the Greenfield estate. The last opinion of this court (25 Cal.2d 582) is, however, in conflict with its earlier opinion (22 Cal.2d 713), in that in the earlier opinion the discussion concerned the respective interests of Mr. and Mrs. Mather in the *claim as a whole,* while in the last opinion it spoke of their respective rights in the *fund of $12,549.60,* which was treated as being synonymous with the whole claim. This conflict resulted because of the failure to distinguish the difference between the issues in the Los Angeles and San Francisco actions. In the complaint filed by Mr. Mather in the Los Angeles action, he alleged that at the time this assignment was executed there was due and unpaid on said claim the sum of $38,699 plus accrued interest, and that Mrs. Mather had been paid on account of her half interest in said claim the sum of $7,441. He alleged that the assignment was invalid and that he was entitled to the return of the sum which Mrs.

Mather had been paid under it and that she should not receive any further amount by virtue of the assignment. While the administrators of the Greenfield estate were joined as defendants in that action, they were joined solely for the purpose of restraining them from making any further payments to Mrs. Mather. They filed an answer in which they simply alleged that they were holding as the unpaid balance of said claim the sum of $12,549.60 subject to the determination of the validity of the assignment which Mr. Mather had executed to Mrs. Mather for an undivided one-half interest in said claim. No evidence was offered in any of the hearings in the Los Angeles action as to what, if any, payments had been made to Mr. Mather by the administrators of the Greenfield estate, and there was no showing before the Superior Court of Los Angeles County at any time that Mr. Mather at the time he commenced the Los Angeles action had already received more than his share of the proceeds of said claim if his assignment to Mrs. Mather was valid. These facts were known to Mr. Mather, as he had signed vouchers for the payments which he had received from the administrators of the Greenfield estate showing that he had received between the date of the assignment on June 16, 1933, and the date of the commencement of the action on August 4, 1934, a total sum of $26,569.05, which was $3,439.23 more than his share of the unpaid balance of the claim at the time the assignment was executed. It is obvious that if the amount which the respective parties were entitled to receive from the proceeds of this claim was in issue in the Los Angeles action, Mr. Mather should have made a disclosure by either pleading or proof in that action that he had received these payments and that he was not entitled to receive any more of the proceeds of said claim if the assignment executed by him to Mrs. Mather was valid. But it is clear that the amount to which the respective parties were entitled from the proceeds of said claim was not an issue in the Los Angeles action, and the only issue in that action with respect to said claim was whether or not the assignment to Mrs. Mather was valid. That issue was first determined by Judge Frank M. Smith in the findings and judgment signed by him on March 12, 1935, and again in the judgment which he signed on November 1, 1943. Neither of these judgments, nor the findings supporting the same, made any reference to the amount to which Mrs. Mather was entitled from the proceeds of the claim, because there was no evidence from which any determination of said amount could be made.

It is abundantly clear from the record that after the interpleader action was commenced in San Francisco on April 12, 1935, Mr. Mather took the position that the issue as to the disposition of the sum of $12,549.60 deposited in the Superior Court of the City and County of San Francisco by the administrators of the Greenfield estate in the interpleader action commenced by them, was to be determined by the San Francisco court and not by the Los Angeles court. Mr. Mather through his attorneys so contended in all of his briefs and petitions until this court made the statement in its opinion in 22 Cal.2d 713, that Mrs. Mather was entitled to one-half and not the whole of said claim. This statement while correct on its face was based upon a misconception that the *whole claim* and the *fund* on deposit in the Superior Court of San Francisco in the interpleader action was one of the same thing.

After the decision of this court in *Mather v. Mather,* 25 Cal.2d 582 [154 P.2d 684], and on March 29, 1945, at the request of Mr. Mather's attorneys, Judge Frank M. Smith of the Superior Court of Los Angeles County entered a judgment in the Los Angeles action awarding to Mr. Mather an undivided one-half of the fund on deposit in the superior court of San Francisco and the other half was awarded to Mrs. Mather. No appeal was taken from this judgment and it became final. This judgment was entered pursuant to the direction of this court in its last-mentioned decision without amendment to the pleadings or the introduction of any evidence relative to the payments received by Mr. and Mrs. Mather from the administrators of the Greenfield estate on account of the claim here involved. As before stated, no evidence was ever presented in the Los Angeles action relative to the respective interests of Mr. and Mrs. Mather in the fund deposited in the Superior Court of the City and County of San Francisco by the administrators of the Greenfield estate in settlement of Mr. Mather's claim against said estate.

It must be remembered that in the San Francisco action Mr. Mather filed an answer and cross-complaint to the complaint in interpleader, in which cross-complaint he joined Mrs. Mather as a cross-defendant and alleged that the assignment executed by him to Mrs. Mather on June 16, 1933, of an undivided one-half interest in his claim against the Greenfield estate was invalid and void because it was executed in the Territory of Hawaii in violation of the laws of that territory, and for that reason he was entitled to the full unpaid

balance of said claim. Mrs. Mather also filed an answer and cross-complaint in said action in which she joined Mr. Mather as a cross-defendant and alleged that she was the owner of the full amount deposited by the administrators of the Greenfield estate in said interpleader action by virtue of the assignment to her by Mr. Mather of an undivided one-half interest in said claim. In said cross-complaint she asked the court to determine the rights of the respective parties to said fund. It is conceded, and the record discloses, that no trial was ever had on these issues in the San Francisco action as the trial court considered the judgment of March 29, 1945, entered in the Los Angeles action to be res judicata of all issues in the San Francisco action and refused to admit any evidence as to the payments which had been made to either Mr. or Mrs. Mather by the administrators of the Greenfield estate subsequent to the date of said assignment. This evidence was, however, offered by Mrs. Mather and now appears in the record before us in the form of an offer of proof of the issues in this action.

It is apparent from the foregoing that we have here a plea of res judicata, based upon a judgment rendered in an action where, in the proceedings therein, there were no pleadings or evidence on the issue claimed to be adjudicated. While in that action the issue as to the respective interests in the claim against the Greenfield estate (one-half to each) was considered, there was never involved, nor was any consideration given to the question as to what payments had been made on the respective interests in said claim by the administrators of the Greenfield estate to either of the parties. The decisions of this court in 22 Cal.2d 713, and 25 Cal.2d 582, which led to the judgment claimed to be res judicata are conflicting, and this court was obviously misled and mistaken as to the true issues involved. Inconsistent positions have been taken by both parties in these actions, and in view of the prior positions taken by Mr. Mather, he has little if any basis for reliance on the judgment in the Los Angeles action as res judicata of the issue in this action as to the amount to which the respective parties are entitled from the fund on deposit in said court. While the litigation was pending in the Los Angeles action which led to the judgment here claimed to be res judicata, but which embraced no issue as to the rights of the respective parties in the fund, the precise question had been presented in an action pending in the Superior Court of the City and County of San Francisco and was clearly set forth in the

pleadings on file therein. From the offer of proof made by Mrs. Mather in the trial court it appears that Mr. Mather has been paid more than his share of the claim against the Greenfield estate, and although Mrs. Mather has made assignments of her interest in the claim, so far as appears, Mr. Mather has not, thus indicating that no intervening innocent third parties have been misled by the Los Angeles judgment. All those circumstances together with the facts and history of the litigation heretofore set forth present a situation where the doctrine of res judicata should not be applied.

We are mindful of the rule that a judgment rendered in an action in personam by a court having jurisdiction over the subject matter and the parties is not void and subject to collateral attack merely because it may erroneously determine some matter not specifically raised in the pleadings, and not covered by the evidence before the trial court, and that such a judgment is res judicata. We adhere to this rule. (See, *Kupfer v. Brawner*, 19 Cal.2d 562 [122 P.2d 268]; *Estate of Keet*, 15 Cal.2d 328 [100 P.2d 1045].) But in rare cases a judgment may not be res judicata, when proper consideration is given to the policy underlying the doctrine, and there are rare instances in which it is not applied. In such cases it will not be applied so rigidly as to defeat the ends of justice or important considerations of policy. (See, *Guardianship of Di Carlo*, 3 Cal.2d 225 [44 P.2d 562, 99 A.L.R. 990]; 50 C.J.S., Judgments, § 592.)

By reason of the special circumstances appearing in this case, as above narrated, we are constrained to hold that the doctrine of res judicata should not be applied here, and that the issue as to the respective portions of the fund on deposit in the court below to which the parties hereto are entitled should be determined without regard to the judgment in the Los Angeles action. The judgment is reversed.

Gibson, C. J., Shenk, J., and Schauer, J., concurred.

TRAYNOR, J.—I dissent.

The majority opinion purports to adhere to "the rule that a judgment in an action in personam by a court having jurisdiction over the subject matter and the parties is not void and subject to collateral attack merely because it may erroneously determine some matter not specifically raised in the pleadings, and not covered by the evidence before the trial court, and that such a judgment is res judicata." It then departs from the

rule by holding that the application of the doctrine of res judicata in the present case would "defeat the ends of justice or important considerations of policy"; how, any more than in hundreds of other cases where the courts have refused to reexamine final judgments to determine whether or not they were erroneous, is never specified. So cavalier a departure from res judicata throws into question the finality of any judgment and thus is bound to cause infinitely more injustice in the long run than it can conceivably avert in this case. It is an invitation to all unsuccessful litigants to relitigate their cases, for they commonly view judgments against them as erroneous and hereafter can contend with justifiable cause that their cases also present an exceptional combination of circumstances requiring a departure from the doctrine of res judicata.

The Di Carlo case, 3 Cal.2d 225, 235 [44 P. 2d 562, 99 A.L.R. 990], relied upon in the majority opinion, is not authority for the reexamination of a final judgment to determine whether under the particular circumstances of the case an injustice has been done. In that case, this court held in accord with the weight of authority (see cases collected in 99 A.L.R. 996) that intermediate accounts of a guardian are not conclusive against a ward but may be reexamined by the probate court upon a subsequent or final account. It noted that a different rule applies to the intermediate accounts of executors, administrators, and testamentary trustees, by virtue of Probate Code, sections 931 and 1123, and held such cases distinguishable on the ground that an intermediate account of a guardian is made while the adverse party, the ward, is under a disability and usually unable to protect himself. (See also 99 A.L.R. 996 and the cases there collected.) "This distinction is sufficient to justify an exception to the normal application of res judicata." (Guardianship of Di Carlo, supra at 235.) The court did not find the circumstances of the Di Carlo case so unusual as to justify an exception to the application of the doctrine but held merely that such proceedings are not final as against a ward and therefore not within its normal application. A rule that the doctrine of res judicata does not apply to a specific type of order can hardly serve as a basis for a rule that the application of the doctrine depends on the circumstances of a case, which must be reexamined to determine whether the doctrine will serve or "defeat the ends of justice or important considerations of policy."

By what test are the trial and appellate courts of this state to determine whether the circumstances of a case are rare enough to justify a departure from the doctrine of res judicata? The dissenting opinions filed by members of this court demonstrate the difficulty of determining whether a particular judgment defeats the ends of justice or violates important principles of policy. The number of times this court has overruled earlier decisions is a reminder that principles of justice and policy are not static. No test emerges from the turbid generalities of the majority opinion; in fact it precludes any application of the doctrine of res judicata until the courts look behind each judgment to the specific circumstances of each case to determine whether those circumstances involve such considerations of policy or justice as to require a departure from the doctrine. The rule announced in the majority opinion therefore defeats the whole purpose of the doctrine of res judicata by casting the shadow of doubt on the finality of judgments.

The record in this case and the previous litigation between the parties disclose only one ground for holding that the application of the doctrine of res judicata might result in injustice, namely, that the opinion of this court in *Mather* v. *Mather*, 25 Cal.2d 582, 585 [154 P.2d 684], directing the particular judgment may have been erroneous. Heretofore it had virtually always been held that the correctness of a previous order or judgment cannot be considered until it has been decided that the doctrine of res judicata is not applicable. "An erroneous judgment is as conclusive as a correct one." (*Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636, 640 [134 P.2d 242]; *Lamb* v. *Wahlenmaier*, 144 Cal. 91, 95 [77 P. 765, 103 Am.St.Rep. 66]; *Edmonds* v. *Glenn Colusa Irr. Dist.*, 217 Cal. 436, 446 [19 P.2d 502].) Nor is it material that the error, if any, may be an error made by this court or some other appellate court. (*Philbrook* v. *Newman*, 148 Cal. 172, 174 [82 P. 772]; *McPhee* v. *Reclamation District*, 161 Cal. 566, 572 [119 P. 1077].)

Consider how often the circumstances of this case have been reviewed. It is necessary, however tedious, to recount the circumstances once more to demonstrate that there are no considerations of policy or justice in this case that warrant a departure from the doctrine of res judicata.

The appeal in this case is from a judgment in an action of interpleader to determine the rights of defendants to a cer-

tain fund under a property settlement agreement executed in the Territory of Hawaii on June 16, 1933, between A. W. Mather, respondent, and Dorothy Devore Mather (also known as Anna Inez Mather), one of the appellants. Mr. Mather assigned to Mrs. Mather a half interest in a claim and in the interest thereon against the estate of Louis R. Greenfield. The agreement recited that the claim was for $75,000. At the time of the assignment, the principal due on the claim was $38,699. During the litigation between Mr. and Mrs. Mather regarding the validity of the property settlement agreement, the administrators of the Greenfield estate deposited with the clerk of the San Francisco Superior Court the sum of $12,549.60 on the claim of Mr. Mather. The present appeal was taken by Mrs. Mather and her assignees from a judgment of that court determining that Mr. Mather was entitled to half the fund.

The rights of the parties to the fund in question turn on previous litigation between them, including five appeals to this court. On August 3, 1934, Mr. Mather brought an action against his former wife in the Superior Court of Los Angeles County, hereinafter referred to as the Los Angeles action, to rescind the property settlement agreement, joining as defendants Lessie G. Williams, the Security-First National Bank of Los Angeles, and the administrators of the Greenfield estate. The complaint alleged that Lessie G. Williams, Mrs. Mather's mother, claimed an interest in some of the property involved in the litigation. She joined with Mrs. Mather in demurrers and in an answer to the complaint. The complaint also alleged that the Security-First National Bank of Los Angeles was acting as Mrs. Mather's agent and had custody of certain money and securities involved in the litigation. The record fails to disclose any answer filed by this defendant. The complaint also alleged that the administrators of the Greenfield estate paid Mrs. Mather the sum of $7,441 on account of the assignment to her of a half interest in Mr. Mather's claim against the estate. Mr. Mather sought to have the administrators restrained from making further payments to Mrs. Mather under this assignment.

The administrators of the Greenfield estate answered Mr. Mather's complaint alleging ''That at all times hereinafter mentioned these defendants . . . have held and now hold for the account of whom it may concern, and on account of a claim originally filed by A. W. Mather against the estate of Louis

R. Greenfield, deceased, the sum of $12,549.60; that various assignments and notices of assignment have been served upon these defendants affecting the said fund, and among other claimants to said fund there are A. W. Mather, Dorothy Devore Mather, Carl B. Rhodes and Don Lake, and these defendants aver that they are holding the said sum of $12,549.60 subject to the order and direction of the above entitled court.

"WHEREFORE, these defendants pray that they may be hence dismissed, that they may recover their costs of suit incurred herein, and that they may be released of all further liability toward the parties in the above entitled action, and toward all claimants in and to said fund so held by these defendants."

Carl B. Rhodes and Don Lake, referred to in the answer of the administrators of the Greenfield estate, are assignees of Mrs. Mather and are parties to the present proceeding, although they were not parties to the Los Angeles action.

The complaint in the Los Angeles action recited three alleged causes of action against Mrs. Mather based respectively on fraud, on misrepresentation, and on the ground that the agreement was illegal under the laws of Hawaii. After three amendments to the third count of the complaint, a demurrer thereto was sustained without leave to amend, and on March 4, 1935, a judgment was entered that plaintiff (Mr. Mather) recover nothing on the alleged third cause of action. On February 7, 1935, Mr. Mather appealed from this judgment. (L. A. No. 15233.) The cause then proceeded to trial on the issues joined in the alleged first and second causes of action, and on March 14, 1935, judgment was entered in favor of Mrs. Mather on these causes of action. The judgment provided that plaintiff recover nothing by reason of his complaint and dissolved a temporary injunction restraining the administrators of the. Greenfield estate from making any more payments to Mrs. Mather. Notice of appeal from this judgment was filed, but on the motion of Mrs. Mather, the appeal was dismissed for failure to file a transcript within the required time. (L. A. 15481; see *Greenfield* v. *Mather,* 14 Cal.2d 228, 231 [93 P.2d 100].) Meanwhile, Mr. Mather's appeal from the judgment on the third cause of action was pending, and on March 17, 1936, this court dismissed that appeal on the ground that the judgment was not final and therefore not appealable. (*Mather* v. *Mather,* 5 Cal.2d 617 [55 P.2d 1174].)

While these appeals were pending, the present action was commenced as an original action in interpleader by the ad-

ministrators of the Greenfield estate against A. W. Mather, the respondent herein, and Mrs. Mather, Carl B. Rhodes and Don Lake as assignees of Mrs. Mather, the appellants herein. The complaint filed by the administrators set forth the litigation to date and stated that both parties to the Los Angeles action claimed the entire $12,549.60 and that the administrators were ready and willing to pay the money to whomever might be entitled thereto. On August 15, 1935, the San Francisco Superior Court, on motion of the administrators and pursuant to a stipulation of the defendants in this action, directed the administrators to deposit this money with the clerk of the court and discharged the administrators of all claims and demands of the defendants. Mr. Mather and his former wife and her assignees joined issue by cross-complaints and answers. Mrs. Mather and her assignees claimed that her right to the fund in question had been conclusively determined by the judgments in the Los Angeles action. At the trial, Mrs. Mather objected to the introduction of any evidence with respect to Mr. Mather's right to the fund. The trial court sustained this objection and entered judgment for Mrs. Mather on the ground that the judgments in the Los Angeles action were final and binding on the parties. On appeal, this court reversed the judgment of the San Francisco Superior Court on the ground that the Los Angeles judgments were not final. (*Greenfield* v. *Mather,* 14 Cal.2d 228 [93 P.2d 100].)

Thereupon on December 12, 1939 Mrs. Mather had a judgment *nunc pro tunc* entered in the Los Angeles action purporting to cover the matters litigated in the earlier trial. This judgment stated that in the findings of fact and conclusions of law filed on March 12, 1935, it is determined that "plaintiff take nothing by reason of his complaint, and that said answering defendants have their costs against said plaintiff and that the temporary injunction theretofore allowed [against the administrators of the Greenfield Estate] was dissolved February 27, 1935, and should be dissolved.

"It further appears by the answer of Estate of Louis R. Greenfield, deceased, Edna Greenfield, as Administratrix . . . Herman Wobber and Hugo D. Keil, as Administrators of the Estate of Louis R. Greenfield, deceased, that they are holding the sum of $12,549.60 on part of the claim of A. W. Mather against said Estate which was transferred and assigned by him to Anna Inez Mather by the name of Dorothy Devore Mather, . . . expressly subject to the order and direction of the above

court in this action, and that said sum belongs to and should be paid to said defendant Anna Inez Mather."

The judgment further provided as follows:

"(1) That plaintiff take nothing by reason of his complaint. . . .

"(2) That the injunction heretofore issued in this action be and the same is hereby dismissed and dissolved as of February 27, 1935.

"(3) That the answering defendants, Anna Inez Mather and Lessie G. Williams have and recover their costs herein. . . .

"(4) That the Estate of Greenfield, Edna Greenfield as Administratrix, and Herman Wobber and Hugo D. Keil, as Administrators, thereof, do pay to said Anna Inez Mather . . . the sum of $12,549.60, admitted in their hands subject to the order and directions of this court in this action."

On January 4, 1940, Mr. Mather gave notice of motion to set aside this judgment upon the ground that the motion for entry of judgment was made without notice to the adverse parties and that the judgment was not in accord with the order for entry of judgment or any order for judgment. Judge Hanson, who gave the order for the judgment of December 12, 1939, but who had not presided at the trial of the action, denied this motion. In a memorandum opinion, however, he made the following observations:

"An answer to the complaint was . . . filed by the administrators of the Estate of Louis R. Greenfield, they having been joined as defendants with the defendants above mentioned, wherein it was averred they held the sum of $12,549.60 for such person or persons as might be entitled thereto, depending upon the question as to who was the rightful assignee, if any, of a claim filed by the plaintiff with the said administrators, and that said administrators held said sum 'subject to the order and direction of this court.' The case having gone to trial on the issues made, the court filed its findings and conclusions of law, in which it determined all the issues against the plaintiff and found, among other things . . . that plaintiff transferred 'one-half of the title standing in his name to the approved claim against the estate of Louis R. Greenfield, deceased.' . . .

"At the moment it seems to me that the judgment should, at most, have recited that Anna Inez Mather was entitled to one-half and not all of the $12,549.60 as it recites. I predicate this thought on the finding above referred to. However, I

have not had occasion to search the file and it may be that there is an amended finding or that the recital in the judgment is sustained by some other finding. The file is large and I have no occasion at this time to consider the point for reasons presently to be stated.

"The motion of the plaintiff asks that the judgment I signed be set aside (1) because it is not in accordance with my order of December 7, 1939, granting the motion; (2) that timely notice was not given of the motion. These being the only grounds stated, I can consider none other."

Mr. Mather appealed from the judgment of December 12, 1939 primarily on the grounds (1) that the motion for judgment was made without notice; (2) that a judge who had not tried the case made new findings of fact in the recital in the judgment and that the judgment did not conform to the findings made after trial of the case; (3) that the property settlement agreement was illegal under the laws of Hawaii. The District Court of Appeal filed an opinion on April 15, 1942, to the effect that the judgment should be modified to provide that Mrs. Mather was entitled to only half the sum held by the administrators of the Greenfield estate, and as modified should be affirmed. (*Mather* v. *Mather*, (Cal.App.) 124 P.2d 625, 628, 630.) Mrs. Mather petitioned for a rehearing. Mrs. Mather's petition was directed solely to the question of the modification of the judgment. She contended that certain allegations in Mr. Mather's complaint showed that she was entitled to a judgment awarding her the entire sum and that the new findings followed this complaint. Mr. Mather likewise filed a petition for rehearing seeking a reversal of the judgment and filed a separate brief in reply to Mrs. Mather's petition for a rehearing on the ground that certain misstatements were contained therein. Mr. Mather contended that the issue as to the extent of the rights of the respective parties in the fund in question was not determined in the trial and was not covered in his complaint. Objections were made to various alleged misquotations from his complaint and from the memorandum opinion of Judge Hanson. In this brief, however, there are several statements that may be interpreted as indicating that Mr. Mather was supporting the position taken by Judge Hanson and by the District Court of Appeal with respect to the rights of the parties in the fund in question in the event the judgment should be affirmed.

The District Court of Appeal granted a rehearing and on

June 17, 1942, filed an opinion holding that the judgment was void and that it was therefore not necessary to consider the other questions raised by the parties. (*Mather* v. *Mather*, (Cal.App.) 126 P.2d 960, 962.) Mrs. Mather then petitioned this court for a hearing. Her petition was granted, and on March 1, 1943, an opinion was filed by this court modifying the judgment to order the administrators to pay Mrs. Mather "one half of the sum of $12,549.60, admittedly in their hands, subject to the order and direction of the court in this action . . ." and affirming the judgment as so modified. (*Mather* v. *Mather*, (Cal.) 134 P.2d 795, 800.)

This court stated in its opinion that the trial court had found "that Anna Inez Mather had but a one-half interest in the claim against the Greenfield estate. That being so, Anna Inez Mather should be entitled to only one-half of the money in the hands of the administrators for payment of the claim, in the absence of anything in the record to the contrary. *The record does not show that the entire sum was being held for her.*" (*Mather* v. *Mather, supra,* 134 P.2d at p. 799; italics added.) Mr. Mather filed a petition for a rehearing, but Mrs. Mather did not. Mrs. Mather opposed this petition, but the court granted it and filed a new opinion on August 27, 1943. In the final opinion on that appeal this court reversed the judgment on the grounds that it was entered without proper notice to Mr. Mather and that it was inconsistent with the findings and conclusions of law made at the trial of the action in providing that Mrs. Mather was entitled to the entire $12,549.60 in the hands of the administrators of the Greenfield estate. (*Mather* v. *Mather,* 22 Cal.2d 713, 717-719 [140 P.2d 808].)

Following this decision, the Los Angeles Superior Court entered a judgment substantially the same as the first purported judgments in the Los Angeles action in that it failed to provide for the disposition of the money held by the administrators of the Greenfield estate. Mr. Mather appealed to this court, contending that the validity of the property settlement agreement under the Hawaiian law had not yet been decided by this court and that the judgment failed to follow the decision in *Mather* v. *Mather,* 22 Cal.2d 713, *supra,* because it did not dispose of the $12,549.60. This court in *Mather* v. *Mather,* 25 Cal.2d 582, 587 [154 P.2d 684], held that the property settlement agreement was valid but that the judgment violated the directions of this court on the former appeal. Accord-

ingly, the judgment was reversed with directions to the trial court to include "in its judgment a provision that the sum now held on account of the claim against the Greenfield estate be paid as follows: one-half to the plaintiff, A. W. Mather, and one-half to the defendant Anna Inez Mather."

The court noted that "While there appears in the record a complicated mathematical argument whereby the defendant Anna Inez Mather seeks to show that she is entitled to the *whole amount* of said claim, the point of division has already been finally decided. . . ." (*Mather* v. *Mather, supra,* 25 Cal. 2d at 585.) The argument referred to was substantially the same one presented by Mrs. Mather in her petition for rehearing in the District Court of Appeal in the course of the third appeal from the Los Angeles action. Although she contended that Mr. Mather must have received his full share of the claim because of the small amount of money left in the hands of the administrators of the Greenfield estate, she made no reference to anything in the record that would indicate that any payment had been made to Mr. Mather in excess of the amount admittedly paid to her.

Pursuant to the directions of this court, the Los Angeles Superior Court, in March, 1945, entered a judgment determining "That the sum of $12,549.60 admittedly in the hands of the estate of Louis R. Greenfield . . . subject to the order and direction of the court in this action, be paid as follows: One-half of the said sum of $12,549.60 to plaintiff, A. W. Mather, and one-half thereof to defendant, Anna Inez Mather. . . ." No appeal was taken from this judgment and it has become final. The question before this court in the present proceeding is whether this is a valid judgment binding on the parties to the present action.

On the present appeal, Mrs. Mather again claims the entire amount of the fund, this time on the basis of an offer of proof with respect to payments heretofore made on the claim against the Greenfield estate. This offer of proof was made for the first time in the San Francisco action after the March 1945 judgment of the Los Angeles court had become final, and Mr. Mather had filed a supplemental pleading in the San Francisco interpleader action seeking half the fund on the basis of the Los Angeles judgment. Mrs. Mather and her assignee claim the right to show that the Los Angeles judgment is erroneous with respect to the rights of the parties in the fund in question on the following grounds: (1) The matter was not litigated

in the Los Angeles action; (2) the assignees of Mrs. Mather were not parties to the Los Angeles action; (3) the judgment in the Los Angeles action, insofar as it purports to determine the rights of Mr. and Mrs. Mather to the fund, was fraudulently obtained by Mr. Mather's concealing from the trial court and this court that he had been fully paid his half interest on the claim. In support of these contentions, Mrs. Mather offered to prove that Mr. Mather signed vouchers of the Greenfield estate acknowledging payments equal to at least half of his approved claim of $38,699 and the accrued interest thereon between the dates of the property settlement agreement and the filing of his complaint in the Los Angeles action in August 1934. According to this offer of proof, Mrs. Mather received only $7,441, and the remainder of her half of the approved claim and interest was withheld by the administrators of the estate and amounted to the entire $12,-549.60. The offer of proof was rejected by the trial court and judgment was entered in accord with the final judgment in the Los Angeles action.

At the time of the appeal in *Greenfield* v. *Mather,* 14 Cal.2d 228, *supra,* the Los Angeles action had not been terminated by a final judgment, and the rights of the parties were therefore not finally determined. Since that time a final judgment has been entered in that action, which was pleaded by Mr. Mather in his supplemental cross-complaint. The judgment in the Los Angeles action is therefore conclusive in the present action insofar as it meets the requirements of res adjudicata or estoppel. (*Bennett* v. *Forrest,* 24 Cal.2d 485, 493 [150 P.2d 416]; *Williams* v. *Southern Pac. Co.,* 54 Cal.App. 571, 576 [202 P. 356]; Rest., Judgments, § 43; 2 Freeman on Judgments (5th ed.), 1925, 1519.)

It is contended that the present action does not involve the same cause of action as that involved in the Los Angeles action on the ground that final determination of that action did not necessitate a determination of the respective rights of the parties in the fund. Even if it be assumed that the two cases do not involve the same cause of action, the Los Angeles judgment, as a final judgment, is effective by way of estoppel and is binding on the parties thereto and their privies with respect to the matters actually litigated. (Code Civ. Proc., § 1908; *Sutphin* v. *Speik,* 15 Cal.2d 195, 202, 205 [99 P.2d 652, 101 P.2d 497]; see *Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636, 637-638 [134 P.2d 242] and cases there col-

lected; Rest., Judgments, § 68; 2 Freeman, op. cit. *supra,* § 676.) Whether or not consideration was given at the original trial in Los Angeles, to what was the extent of the rights of Mr. Mather and Mrs. Mather in the fund in question that question has been the main one in the litigation between the parties in the last two appeals to this court. This court has expressly held that the question was put in issue by the answer of the administrators of the Greenfield estate, and a final judgment in the Los Angeles action has been entered expressly dividing between Mr. Mather and Mrs. Mather the sum of $12,549.60 held by the administrators of the Greenfield estate subject to the orders of the Los Angeles court.

It follows that unless the final Los Angeles judgment is void and subject to collateral attack, Mrs. Mather is bound by the determination of the Los Angeles court that she is entitled to only half the sum of $12,549.60 that was still due on the claim against the Greenfield estate at the time the administrators filed their answer in the Los Angeles action. Mrs. Mather contends, however, that the question of the respective rights of the parties in this fund was not in issue in the Los Angeles action, on the ground that the answer of the Greenfield estate was not served on her and that there was no evidence presented at the trial of that action with respect to the extent of their rights, the sole issue at the trial having been the validity of the agreement between Mr. and Mrs. Mather under which the latter claims an interest in the fund. It was Mrs. Mather, however, who had the judgment of December 12, 1939, entered in the Los Angeles action that expressly determined that the matter was put in issue by the answer of the administrators. Moreover, before that judgment was entered she had a judgment entered in San Francisco determining that she was entitled to the whole sum on the ground that her right thereto was finally determined by the first judgments in the Los Angeles action. (*Greenfield* v. *Mather,* 14 Cal.2d 228 [93 P.2d 100].) After this litigation and after the question was determined in the Los Angeles action and argued before this court on several appeals, a final judgment was entered pursuant to the express directions of this court, determining that the matter was in issue in the Los Angeles action and that Mrs. Mather was entitled to only half the fund in question. Regardless of whether the Los Angeles judgment and the opinions on which it is based are erroneous, they are not void and not subject to collateral attack.

Although there is language in cases such as *Baar* v. *Smith,* 201 Cal. 87, 98 [255 P. 827], to the effect that a judgment that determines a matter not specifically put in issue by the pleadings or covered in the evidence at the trial is not only erroneous but void and subject to collateral attack, such cases have been distinguished on the ground that in those cases "the question of 'validity' of the judgment was being considered in connection with an appeal from the judgment. . . . None of these cases would justify a conclusion that the prior judgment must be declared void." (*Kupfer* v. *Brawner,* 19 Cal.2d 562, 564-565 [122 P.2d 268], citing cases containing such dicta.) A judgment is subject to collateral attack only when the court lacks jurisdiction "over the cause, over the parties, and over the thing, when a specific thing is the subject of the judgment." (Code Civ. Proc., § 1917.) Since the judgment in the present case was in personam, no problem of the jurisdiction over a specific thing or in rem is involved in this case. An in personam judgment by a court that has jurisdiction over the subject matter and over the parties is therefore not void and subject to collateral attack merely because it may erroneously determine some matter not specifically raised in the pleadings and not covered in the evidence before the trial court. (*Ex parte Bennett,* 44 Cal. 84, 87; *Kupfer* v. *Brawner,* 19 Cal.2d 562, 564 [122 P.2d 268]; *Estate of Keet,* 15 Cal.2d 328, 333-335 [100 P.2d 1045].)

Even if it is assumed therefore that this court erroneously determined that the answer of the administrators of the Greenfield estate put in issue the rights of the parties, that determination and the judgment based thereon is not void, "[t]he scope of a judgment, when collaterally attacked, is not limited to the factual or legal points expressly urged by counsel or considered by the court; it extends to matters which could have been raised and considered in the particular proceedings under the particular pleadings." (*Estate of Keet, supra,* 15 Cal.2d at p. 334.) The principal issue raised by the pleadings of Mr. and Mrs. Mather was the validity of the property settlement agreement, including the provision for an equal division of the claim held by Mr. Mather against the administrators of the Greenfield estate. The complaint of Mr. Mather put in issue the right of Mrs. Mather to any interest in the claim. It cannot seriously be argued therefore that the trial court lacked jurisdiction to determine the rights of Mrs. Mather in the amount still due on the claim at the time of trial, whether or

not such jurisdiction may have been erroneously exercised. The sum held by the administrators subject to the orders of the court was the amount still due on the claim and the trial court on directions from this court determined the interests of the parties in that sum.

Nothing could be gained by attempting to determine whether the error, if any, in the opinions of this court and in the judgment was attributable to Mrs. Mather, who obtained judgments in San Francisco and Los Angeles based on the theory that this issue was actually tried in Los Angeles and who contended before this court that the matter was in issue in Los Angeles, or was attributable to certain statements in a brief filed by Mr. Mather on one of the former appeals. Nor can Mrs. Mather claim that she was deprived of a hearing on this question, for the issue as to the rights of the parties in the fund was determined in the Los Angeles judgment, and the correctness of the determination has been argued at length in the former appeals and considered in the opinions of this court and of the District Court of Appeal. Whatever the cause of error, if there be any, the final judgment of the Los Angeles Superior Court conclusively determines the rights of Mr. and Mrs. Mather in the sum of $12,549.60 held by the administrators of the Greenfield estate.

The answer of the administrators referred to the fact that the administrators had received notice of assignments of part of the claim to Carl Rhodes and Don Lake. Both Rhodes and Lake are assignees of Mrs. Mather and were joined as defendants in the San Francisco interpleader action. It is contended by Mrs. Mather and her assignees that the Los Angeles judgment is not conclusive on the rights of the parties to the present action, on the ground that the assignees were not parties to the Los Angeles judgment. A final judgment, however, operates as res judicata and by way of estoppel, binding not only the actual parties to the judgment but those persons who are in privity with them. (Code Civ. Proc., § 1908; *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 811 [122 P.2d 892]; Rest. Judgments, § 83; 1 Freeman, op. cit. *supra,* 959.) The pleadings of Mrs. Mather and her assignees refute the assignees' claim that they are not bound by the Los Angeles judgment to the same extent as Mrs. Mather insofar as it was concerned with the fund. It is admitted in those pleadings that the assignments were made on August 4, 1934. The Los Angeles action was commenced on August 3, 1934, and it is not

contended that the assignees, one of whom has been an attorney for Mrs. Mather throughout this litigation, did not have notice of the commencement of the action. Moreover, they joined in Mrs. Mather's pleadings in which she set up the original purported judgments in that action as a basis for recovery on the former trial of the present action. The Restatement of Judgments, section 89, provides that, "A person who, after the beginning of an action succeeds to the interest of one of the parties is entitled to the benefits of the rules of res judicata with reference to the subject matter; and he is bound by such rules. . . ." (See also 1 Freeman, op. cit. *supra,* 967.) This rule applies in California at least when such persons "have notice, actual or constructive, of the pendency of the action or proceeding." (Code Civ. Proc., § 1908(2).)

It is also contended that the judgment in the Los Angeles action is not binding on the parties to the present action, because certain persons were parties to that action who are not parties to the present action. The parties referred to claimed an interest in some of the property involved in the property settlement agreement but did not claim any interest in the fund in question. Since the title to the fund could be determined without the presence of those parties, their presence in that action is not material with respect to the effect of the judgment in the Los Angeles action on the title to the fund. (Code Civ. Proc., § 1910.)

The assignees of Mrs. Mather claim also that the judgment in the present action should be reversed on the ground that it fails to determine the respective rights of Mrs. Mather and her assignees in her share of the fund. Those parties, however, requested no such determination by the trial court, but in their pleadings alleged that there was no dispute among them and no cause for settlement by the court.

It is contended finally, that the March, 1945 judgment in the Los Angeles action insofar as it relates to the fund was procured by fraud on the part of Mr. Mather and his attorneys. The allegations of fraud are twofold: (1) That at the trial of the Los Angeles action Mr. Mather conspired with his attorneys to conceal payments made to him by the administrators of the Greenfield estate; (2) that Mr. Mather's briefs on previous appeals contain fraudulent misrepresentations of fact with respect to payments made on the claim by the administrators.

The trial court found that these allegations are untrue. Normally the question whether a judgment was procured by

fraud may not be considered on a collateral attack on the judgment but must be determined in an independent action in equity to set aside the judgment for extrinsic fraud. (*Estate of McNeil*, 155 Cal. 333, 345 [100 P. 1086]; additional cases collected in 15 Cal.Jur. 63.) The finding of the trial court, however, indicates that the court regarded Mrs. Mather's answer to the supplemental cross-complaint of Mr. Mather as an equitable defense to the judgment in the nature of an action in equity for relief therefrom. (See Rest., Judgments, § 112(e).) For the purposes of the appeal it may be assumed that the answer of Mrs. Mather properly put in issue her right to equitable relief from the judgment for extrinsic fraud. There is no evidence in the record, however, from which we can determine the correctness of the trial court's finding with respect to the allegation that Mr. Mather was guilty of fraudulent concealment at the time of the trial in the Los Angeles action. In any event, it was unnecessary for the trial court to make the finding, for Mrs. Mather failed to show any basis for equitable relief from the judgment.

If Mr. Mather did conceal any payments made to him before the commencement of the Los Angeles action, there is no allegation or offer of proof sufficient to show that he fraudulently kept Mrs. Mather from sources of evidence that would have revealed this fact. There is nothing in Mrs. Mather's allegations or offers of proof to indicate that due diligence on her part would not have revealed evidence of such overpayment. The administrators of the Greenfield estate, who allegedly made these payments, were parties to the Los Angeles action and were parties to the present action until dismissed on the stipulation of the defendants. There is nothing in the record to indicate that they were not available at those times to testify as to any payments made on the claim. Even if Mrs. Mather may have believed such testimony unnecessary at those times, she cannot now invoke that belief to prevent the application of the doctrines of res judicata and estoppel by judgment. (*Ernsting* v. *United States, Inc.*, 206 Cal. 733, 737 [276 P. 103].) Nor can the application of those doctrines be avoided by the claim of newly discovered evidence. (*Quirk* v. *Rooney*, 130 Cal. 505, 511 [62 P. 825]; cases collected, 149 A.L.R. 1195, 1198, 1201.)

It is also alleged that Mr. Mather and his attorneys made statements in his briefs on appeals from the various Los Angeles judgments that clearly implied that as a matter of fact he was not paid more than his former wife was paid on this

claim. Mrs. Mather has purported to quote several statements from Mr. Mather's briefs to support her claim of fraudulent misrepresentations. Many of these statements are quoted out of context. In several instances statements quoted as those of Mr. Mather are actually references made to the memorandum opinion of Judge Hanson, who granted the judgment of December 12, 1939, but expressed doubt as to the correctness of its determination with respect to the fund in question. If it is assumed, however, that Mr. Mather was in fact paid more than Mrs. Mather, and if it is also assumed that certain statements in Mr. Mather's briefs are false, those statements would not justify a reversal in this case.

It has already been observed that Mrs. Mather was not misled into believing that she had no right to the entire sum (see Rest., Judgments, § 121), for she at all times asserted her right thereto, and she has not shown that evidence of the alleged payments, which she now claims would substantiate her right thereto, was not available in time to prevent the alleged error. Mrs. Mather has thus failed to establish a case for equitable relief from the judgment either on the basis of fraudulent concealment at the time of trial or fraudulent misrepresentations during the course of past appeals. "Equitable relief will be given only in a limited number of situations where the judgment was rendered after proceedings in which the present complainant was deprived of an opportunity of presenting adequately his claim or defense (see secs. 119-125) [Rest. Judgments]. The distinction between the types of situations in which equitable relief will be given and those in which it will not be given, has sometimes been expressed by saying that equity will not relieve for fraud which leads to an erroneous judgment after a trial which is otherwise fair, but only where a party has been prevented from having a reasonably fair trial. The first situation has been described as resulting from intrinsic fraud or error for which no relief will be given; the second situation has been described as resulting from extrinsic fraud, error or misfortune, for which relief will be granted." (Rest. Judgments, § 118, comment b; *Horton* v. *Horton,* 18 Cal.2d 579, 584 [116 P.2d 605]; *Neblett* v. *Pacific Mutual L. Ins. Co.,* 22 Cal.2d 393, 397 [139 P.2d 934]; cases collected 23 Cal.L.Rev. 79.) Even in jurisdictions that make no distinction between extrinsic and intrinsic fraud, relief from a judgment on the ground of fraud cannot be obtained without a showing of due dili-

gence. (See cases collected, 36 Ill.L.Rev. 894, 896.) In any event, the allegations "that the other party [Mr. Mather] was aware of the invalidity of his claim or defense is not of itself a sufficient basis for equitable relief against the effects of the judgment." (Rest. Judgments, § 121, comment a.)

This rule, soundly rooted in public policy, is designed for the benefit of honest litigants, for "the interests of the public and the litigants require that ordinarily where a final judgment has been rendered, there should be no opportunity to relitigate the same matters. Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all the facts." (Rest. Judgments, § 126, comment a.) The failure to give relief in such cases is in the interest of "honest litigants who, long after obtaining a judgment and possibly after means of disproving the charges have disappeared, might be faced with equitable proceedings alleging such fraud." (*Ibid.*, comment c.)

The judgment should be affirmed.

Spence, J., concurred.

Respondent's petition for a rehearing was denied July 1, 1948. Edmonds, J., Traynor, J., and Spence, J., voted for a rehearing and the following opinion was then filed:

EDMONDS, J.—For the reasons stated by Mr. Justice Traynor, I concur in his conclusion that the judgment in this case should have been affirmed. The rule of res judicata is designed "to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy. . . ." (*Miller & Lux, Inc.* v. *James,* 180 Cal. 38, 44 [179 P. 174].) No doctrine in the law is more fundamental and it is vital to the orderly administration of justice. Heretofore, the fact that a prior decision may have been erroneous has not been a ground for allowing a retrial of the issues previously determined and fixed by a judgment. Courts should stand firm against a policy of endless litigation in which nothing is ever decided with certainty.

I, therefore, vote for a rehearing.