**William A. PORTER et al., Plaintiffs-Appellants,**

v.

**W. Francis WILSON et al., Defendants-Appellees.**

**No. 22516.**

United States Court of Appeals Ninth Circuit.

Nov. 19, 1969.

Certiorari Denied April 6, 1970.

See 90 S.Ct. 1260.

David F. Chappell (argued), of Hooper, Steves & Kerry, Fort Worth, Tex., for plaintiffs-appellants.

Richard A. Wilson (argued), of Lutich, D'Angelo & Wilson, Phoenix, Ariz., for defendants-appellees.

Before BROWNING, ELY, and CARTER, Circuit Judges.

BROWNING, Circuit Judge:

This appeal presents a troublesome problem concerning full faith and credit (Art. IV, § 1; 28 U.S.C. § 1738), and the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Plaintiff-appellants William A. Porter and his two sisters, Pearline Porter and Pauline Leonard, doing business as Continental Hotels System, a co-partnership, filed this diversity action in the United States District Court for the District of Arizona to quiet title to the Arizona Hotel, located in Phoenix, Arizona, against an adverse claim asserted by defendant-appellees W. Francis Wilson, Richard A. Wilson, and their wives.

The Wilsons answered, asserting that Mr. Porter's former wife, Gladys E. Porter, had acquired Mr. Porter's interest in the property by deed of the Sheriff of Maricopa County, Arizona, issued pursuant to a sheriff's sale on execution to satisfy a judgment; and that Mrs. Porter had quitclaimed one half of her interest in the property to the defendants on May 4, 1960.

Plaintiffs and defendants filed cross-motions for summary judgment. Plaintiffs contended that their right to title was conclusively determined by a judgment finalized by the Supreme Court of Idaho in Porter v. Porter, 84 Idaho 400, 373 P.2d 327 (1962). Defendants argued that the title dispute was settled adversely to plaintiffs by the Supreme Court of Arizona in Porter v. Porter, 101 Ariz. 131, 416 P.2d 564 (1966), certiorari denied 386 U.S. 957, 87 S.Ct. 1028, 18 L. Ed.2d 107. The district·court held that under the *Erie* doctrine the opinion in the latter action was res judicata, and dismissed the plaintiffs' suit. This appeal followed.

The chronology of the prior litigation is as follows.[1]

---

1. The facts are not in dispute. This summary of the prior litigation is drawn from an affidavit attached to plaintiffs' motion for summary judgment and the following published opinions of the Idaho and Arizona courts. Kemble v. Stanford, 86 Ariz. 392, 347 P.2d 28 (1959); Porter v. Stanford, 86 Ariz. 402, 347 P.2d 35 (1959);

On February 13, 1959, Mrs. Porter filed a separate maintenance action against Mr. Porter in the Superior Court of Maricopa County, Arizona, and attached the Arizona Hotel. Service was obtained upon Mr. Porter by publication and registered mail in accordance with Arizona law (16 A.R.S. Arizona Rules of Civil Procedure, Rule 4(e)). The complaint alleged that Mrs. Porter was a resident of Arizona, that her husband was a resident of Idaho, and that the Arizona Hotel was community property. It asked, among other things, that a portion of the income of the hotel be set aside for the support of Mrs. Porter and minor children of the marriage.

Mr. Porter did not appear. The Porter sisters intervened in the proceedings, however, alleging that although record title to the Arizona Hotel was in Mr. and Mrs. Porter, the hotel was owned by the Continental Hotels System, a partnership composed of Mr. and Mrs. Porter, who owned a two-thirds interest, and the Porter sisters, who owned a one-third interest.

The Arizona court appointed a receiver to manage and conserve the hotel.

On May 14, 1959, the Arizona court entered a decree of separate maintenance in favor of Mrs. Porter, determined that the Arizona Hotel was community property rather than the property of the partnership,[2] and imposed a lien on the hotel for support payments, attorneys' fees, and costs. On June 1, 1959, the court ordered the receiver to pay $1,000 a month toward the support of Mrs. Porter and the children, pendente lite.

On July 21, 1959, the Arizona trial court entered a judgment[3] for the arrearage in support payments due Mrs. Porter under the earlier judgments. Mrs. Porter obtained execution and levied upon the hotel, and on August 20, 1959, purchased all of Mr. Porter's interest at the sheriff's sale. On April 7, 1960, Mrs. Porter received a sheriff's deed to the property.[4]

Meanwhile, on May 25, 1959, eleven days after the Arizona court issued its separate maintenance decree, Mr. Porter sued Mrs. Porter for divorce in the Idaho District Court in Kootenai County, their marital domicile. Mrs. Porter appeared in the Idaho court, filing an answer and counterclaim. She prayed for a divorce, custody of the children, support payments and one half of the community property. She asked also that the Arizona separate maintenance decree be given full faith and credit and that judgment be entered in accordance with its terms, including a money judgment for payments past due.

The Porter sisters intervened in the Idaho action and asserted their partnership interest in the Phoenix Hotel. Thus all parties appeared personally in the Idaho proceedings.[5]

On December 28, 1960, the Idaho district court, after trial, entered its final

---

Kemble v. Porter, 88 Ariz. 417, 357 P.2d 155 (1960); Porter v. Porter, 84 Idaho 400, 373 P.2d 327 (1962); Porter v. Porter, 1 Ariz.App. 363, 403 P.2d 298 (1965); Porter v. Porter, 101 Ariz. 131, 416 P.2d 564 (1966).

2. *See* Porter v. Stanford, *supra,* 86 Ariz. at 408, 347 P.2d at 38, interpreting this decree as including a finding that the hotel was community property rather than property of the partnership, which finding was res judicata so far as Mr. Porter was concerned. The court further held that, as the record then stood, this finding was also binding upon the Porter sisters because of the presumption arising from an uncontroverted allegation that the record title was in Mr. and Mrs. Porter.

3. This judgment, under Arizona law, was a final judgment. Porter v. Porter, *supra,* 101 Ariz. at 131, 416 P.2d at 566.

4. In Porter v. Porter, *id.* at 131, 416 P.2d at 566, the Arizona Supreme Court concluded that as a result of the sheriff's sale and deed, Mrs. Porter became sole owner of whatever interest Mr. Porter had in the hotel.

5. Defendant-appellees W. Francis Wilson and Richard A. Wilson were Mrs. Porter's attorneys in both the Arizona and Idaho litigation, and thus were fully aware of the adverse claims to the hotel property.

judgment. The Idaho court granted Mrs. Porter a divorce, but held that the Arizona separate maintenance decree was not entitled to full faith and credit because Mr. Porter had not been served in Arizona and had not appeared personally in the Arizona action. The Idaho court therefore made its own award with regard to custody of the children, child support, and alimony. It also re-examined the question of the ownership of the Arizona Hotel, and determined that the hotel was partnership property rather than the sole property of Mr. and Mrs. Porter. In dividing the community property, the Idaho court awarded Mr. and Mrs. Porter's two-thirds partnership interest in the Arizona Hotel to Mr. Porter. Accordingly, Mrs. Porter was ordered to transfer her interest in the hotel to Mr. Porter. She was also required to dismiss the proceedings in Arizona, remove the Arizona receivership, release the judgments she had theretofore obtained, and refrain from maintaining any action in the future against Mr. Porter or the Porter sisters affecting the hotel.

On July 12, 1962, the judgment of the Idaho district court was modified in a respect not relevant here and otherwise affirmed by the Supreme Court of Idaho. Porter v. Porter, *supra*, 84 Idaho 400, 373 P.2d 327. Mrs. Porter executed the deeds required of her by the Idaho decree. This is the prior adjudication upon which plaintiffs rely.

The Porter sisters filed a supplemental complaint in intervention in the Arizona separate maintenance action seeking full faith and credit for the Idaho court's determination that the Arizona Hotel was partnership property, and alleging that Mrs. Porter had relinquished her interest in the hotel in compliance with the terms of the Idaho decree. The Arizona trial court directed entry of judgment on the complaint in intervention in favor of Mrs. Porter.

The Arizona Court of Appeals reversed, holding that since the Idaho court had personal jurisdiction over the parties the Arizona courts were required to give full faith and credit to the Idaho judgment adjudicating the in personam rights of the parties in the Arizona Hotel. Porter v. Porter, 1 Ariz.App. 363, 403 P.2d 298 (1965).

On July 14, 1966, however, the Arizona Supreme Court reversed the Arizona Court of Appeals. The Arizona Supreme Court held that the Idaho judgment was not entitled to full faith and credit, and that there was no other showing before the Arizona trial court sufficient to overcome the presumption from the record title that the hotel was community rather than partnership property when acquired by Mrs. Porter at the sheriff's sale. The Supreme Court therefore vacated the Court of Appeals opinion and affirmed the judgment of the Arizona trial court. Porter v. Porter, 101 Ariz. 131, 416 P.2d 564 (1966). The Supreme Court of the United States denied certiorari. 386 U.S. 957, 87 S.Ct. 1028, 18 L.Ed.2d 107 (1967). This is the prior adjudication upon which defendants rely.

We have concluded that the federal district court properly held that it was bound by the Arizona Supreme Court's decision.

This is not because the Arizona Supreme Court's ruling was correct, but rather because the full faith and credit requirement and the *Erie* doctrine compel acceptance of the Arizona judgment even if the Arizona court erred in refusing to give full faith and credit to the prior Idaho judgment.[6]

---

6. The Arizona Supreme Court's decision is criticized in 9 Ariz.L.Rev. 88 (1967) and 71 Dick.L.Rev. 487 (1967), and is cited in several commentaries as contrary to the Supreme Court's holding in Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939). Restatement (Second) of Conflicts § 114, at 410; Leflar, American Conflicts Law 180 n. 9 (1968 ed.). A similar decision of the Nevada Supreme Court, Colby v. Colby, 78 Nev. 150, 369 P.2d 1019 (1962), has

The issue presented to the federal district court for Arizona was whether the Idaho adjudication of the conflicting claims of Mrs. Porter and the Continental Hotels System partnership to ownership of the Arizona Hotel was entitled to full faith and credit in Arizona. But the Porter sisters had already presented this precise issue to the Arizona courts in their supplemental complaint in intervention in the Arizona separate maintenance proceeding, and the Arizona Supreme Court had decided that issue against them. The Porter sisters were bound by this decision in subsequent litigation in the federal district court.

■ The Arizona Supreme Court's decision also bound Mr. Porter, the original named defendant in the separate maintenance suit, though he did not appear personally in the litigation. The Arizona courts had jurisdiction to render a judgment in the separate maintenance proceeding with respect to Mr. Porter's interest in the hotel which would bind Mr. Porter; the property was located in Arizona; it was brought within the jurisdiction of the Arizona court by attachment; and reasonable notice and opportunity to appear were afforded Mr. Porter through service by publication and mail in accordance with the Arizona statute.[7] "A quasi-in-rem judgment by a court with jurisdiction

over the property conclusively determines the interests in the property of the parties named" (Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 833–34 (1952), and is entitled to full faith and credit to the extent of the named defendants' interest in the property. Vanderbilt v. Vanderbilt, 354 U.S. 416, 418 n. 6, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); Huron Holding Co. v. Lincoln Mine Operating Co., 312 U.S. 183, 194, 61 S.Ct. 513, 85 L.Ed. 725 (1941); Pennington v. Fourth National Bank, 243 U.S. 269, 271–272, 37 S.Ct. 282, 61 L.Ed. 713 (1917); Pennoyer v. Neff, 95 U.S. 714, 727, 730, 731, 24 L.Ed. 565 (1877).

■ Defendants' basic error, it seems to us, lies in the mistaken assumption that it was the role of the federal district court to review and revise the decision of the Supreme Court of Arizona on the issue presented to that court under the full faith and credit clause. The sole function of the federal court, however, was to give the Arizona judgment "the same full faith and credit * * * as [it] ha[d] by law or usage in the [Arizona] courts * * *." 28 U.S.C. § 1738 (1964). Plaintiffs' remedy for an erroneous denial of full faith and credit to the Idaho judgment by the Arizona Supreme Court for review in the Supreme Court of the United States, not

also been subjected to critical comment. *See* 63 Colum.L.Rev. 560 (1963); 31 Geo.Wash.L.Rev. 648 (1963); 15 Stan.L. Rev. 331 (1963); 16 Vand.L.Rev. 193 (1963).

7. *Moreover, it is clear from the record that Mr. Porter had ample opportunity to litigate the full faith and credit issue in the Arizona court.*

Mr. Porter was aware that his sisters had submitted the full faith and credit issue to the Arizona court in their supplemental complaint in intervention. On September 10, 1964, he joined the other plaintiffs in an application to the court below to stay further proceedings pending the Arizona Supreme Court's resolution of this issue. The application represented "that the bulk of the issues [in the fed-

eral action] are expected to be determined in" the appeal in the Arizona state proceeding and that "the immediate prosecution of the [federal] action would be a waste of time and effort on the part of the court, litigants and counsel." The *federal court granted the stay.*

Subsequently, after the Arizona Court of Appeals had rendered a decision favorable to Mr. Porter's sisters, and while an appeal from that decision was pending before the Supreme Court of Arizona, Mr. Porter joined his sisters in the motion asking the federal district court to grant summary judgment in their favor.

The attorneys who filed the application for a stay and the motion for summary judgment also represented the Porter sisters in the Arizona state litigation.

collateral attack in the federal district court. This is the holding of Treinies v. Sunshine Mining Co., 308 U.S. 66, 74–78, 60 S.Ct. 44, 84 L.Ed. 85 (1939). *See also* Morris v. Jones, 329 U.S. 545, 552, 67 S.Ct. 451, 91 L.Ed. 488 (1947); Southard v. Southard, 305 F.2d 730, 732 (2d Cir. 1962).

This would be true even if contradictory judgments were involved, for "[i]t is the latest final adjudication of the issue which controls, even though the latest is one which could itself have been reversed for violation of the full faith and credit clause had timely appeal been taken." Leflar, American Conflicts Law 187 (1968 ed.); *see also* Restatement (Second) of Conflicts § 114, comments a & b, 407–09 (1967); Restatement of Judgments § 42 (1942); 15 Stan.L. Rev. 331, 335–36 (1963). Here the case is clearer, for the Arizona judgment was the first and only adjudication of the issue of whether the Idaho judgment was entitled to full faith and credit. Right or wrong, it should be the last. 9 Ariz. L.Rev. 88, 89–90. *See,* Roche v. McDonald, 275 U.S. 449, 454–455, 48 S.Ct. 142, 72 L.Ed. 365 (1928).

▄ This disposition is faithful to the full faith and credit clause's purpose to integrate and unify the nation by according finality to the prior final adjudication of an issue by another state or federal court. Sutton v. Leib, 342 U.S. 402, 407–409, 72 S.Ct. 398, 96 L.Ed. 448 (1952); Riley v. New York Trust Co., 315 U.S. 343, 348–349, 62 S.Ct. 608, 86 L.Ed. 885 (1942). This is so whether or not the Idaho court erred in refusing to give full faith and credit to the Arizona judgment, and whether or not the Arizo-

na court in turn erred in refusing to give full faith and credit to the Idaho judgment. The federal district court had no power to undo the prior decisions of the Idaho and Arizona courts; it could end the chain of relitigation only by stopping it where it then stood.

*Erie* leads also to the conclusion that the Arizona Supreme Court judgment must be followed. This is obviously so if the Arizona law to be applied by the federal court is that reflected in the decision of the Arizona Supreme Court. And even recognizing that the federal district court for Arizona is subject to an overriding duty to adhere to federal constitutional and statutory provisions, including those pertaining to full faith and credit,[8] the latter, as we have pointed out, required recognition of the Arizona adjudication, whether or not it was correct.

The Supreme Court recently restated the purposes of *Erie*: "The *Erie* rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit has been brought in a federal court. * * * The decision was also in part a reaction to the practice of 'forum-shopping' * * *." Hanna v. Plumer, 380 U.S. 460, 467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1963). *See also* Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Fidelity Union Trust Co. v. Field, 311 U.S. 169, 180, 61 S.Ct. 176, 85 L.Ed. 109 (1940). Clearly, both *Erie* aims are served by the federal district court's acceptance of the Arizona Supreme Court's decision.

Affirmed.

---

8. Wells v. Simonds Abrasive Co., 345 U.S. 514, 516, 73 S.Ct. 856, 97 L.Ed. 1211 (1953); First Nat. Bank of Chicago v. United Air Lines, 342 U.S. 396, 399, 400–401, 72 S.Ct. 421, 96 L.Ed. 441 (1952) (concurring opinion of Justice Jackson); Holm v. Shilensky, 388 F.2d 54, 56 n. 2 (2d Cir. 1968); 1A J. Moore, Federal Practice ¶ 0.311(2), 3412–14 (1968); Goodrich, Conflict of Laws §§ 21–25 (4th ed. 1964); Cheatham, Federal Control of Conflict of Laws, 6 Vand. L.Rev. 581, 600 (1953); Leflar, Constitutional Limits on Free Choice of Law, 28 Law & Contemp.Prob. 705 (1963); Wolkin, Conflict of Laws in the Federal Courts: Thirteen Years of Erie R. R. Co. v. Tompkins, 3 Syracuse L.Rev. 47, 51 (1952).