[Civ. No. 39762. First Dist., Div. Four. Feb. 25, 1977.]

ESTHER ILENE HIGHT, Plaintiff and Respondent, v. WILLIAM T. HIGHT, Defendant and Appellant.

**COUNSEL**

Mathews, Traverse & McKittrick and Francis B. Mathews for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—William T. Hight appeals from an order of the Humboldt County Superior Court directing him to pay child support arrearages and current child support; the contention is that the order was barred by a prior judgment of the same court, rendered in an action brought under the Revised Uniform Reciprocal Enforcement of Support Act of 1968 (hereinafter RURESA; Code Civ. Proc., § 1650 et seq.).

A 1969 decree of divorce had granted to Esther Ilene Hight the custody of the couple's two sons; William was granted visitation privileges, and ordered to pay child support. In 1972, William was adjudged in contempt for failure to meet all his obligations of child

support. Punishment was suspended on condition that he pay into a blocked trust account the arrearage as of January 1, 1972.

In 1975, Esther filed in the District Court of Mesa County, Colorado, a complaint to recover arrearages and current support under the Colorado version of RURESA (Colo. Rev. Stats. 1973, art. 5, tit. 14). The Colorado court certified that the complaint stated a cause of action, and forwarded the matter to the District Attorney of Humboldt County, the county of the husband's residence.

The RURESA case was docketed by the Humboldt County Superior Court as People of the State of Colorado ex rel. Esther Ilene Hight v. William T. Hight, No. 57253. The court ordered William to appear and show cause why an order for payment of support should not be made. William answered, pleading affirmative defenses, and appeared at the hearing. Esther did not appear, but was represented by the Humboldt County District Attorney. The court denied relief, determining that Esther had frustrated William's rights of visitation. Some three months later, the district attorney petitioned for dismissal of the case on the stated ground, "child support payments denied plaintiff by Colorado court." The court accordingly rendered judgment of dismissal.

One month later, Esther obtained from the Humboldt County Superior Court two orders to show cause in the divorce action, regarding William's support obligations. William responded, asserting that the older son was emancipated; liability for arrearages in the support of the younger son was conceded in the amount of $1,210. William offered the judgment in the RURESA case as a defense against accruals of support since August 1, 1971, when Esther assertedly began frustrating William's visitation rights.

A hearing was had and the testimony of both parties, and other witnesses, was taken. The court ordered William to (1) pay into a blocked trust account half of the sum specified in the 1972 order, representing support of the younger son; (2) pay arrearage in child support in the sum of $2,795; and (3) pay current child support. The present appeal ensued.

The record is sketchy, but it appears that William kept up his child support payments until 1971. In 1972, Esther procured an order which directed William to pay the arrearage by establishing a blocked trust account of $2,420, $1,210 for each son. William never established the

account. Later in 1972, Esther moved with both sons to Colorado. It is disputed whether she subverted William's visitation rights. In the RURESA case, the court found that she did so; in the present case, the same court found that she did not.

After Esther had moved, William made one effort to send a child support payment to her in Colorado; the check was returned unclaimed and William made no further efforts. Sometime in 1972, the two sons visited William at his home. The younger son made no other visits. The elder son elected to live with his father and was placed in the father's custody by the court in 1972. It appears that William never visited Colorado, and did not contact Esther or the younger son upon learning in 1975 that they were living in Redding.

William claimed he did not know the boys' Colorado address for a long time, and that when he did know it, he understood that Esther had said he should never try to establish contact again and that, if he did, she would shoot him. Esther testified that she made no threats and did not discourage contact.

William contends that, under the doctrine of res judicata, the judgment in the RURESA case should bar any redetermination of the parties' obligations in the present case. The judgment in the RURESA case determined the issues of all arrearages and of current support "so long as the mother continues to secrete the child." Thus, the cause of action for all child support up to the time Esther stopped "secret[ing] the child" was previously litigated.

 ██ To assert the conclusive effect of a judgment, a party must show: that it was final (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 162, p. 3306); that the merits of the issue were tried and determined (*ibid.,* § 168, p. 3310); and that the parties were the same or substantially identical (*ibid.,* § 222, p. 3357). The court is empowered to refuse to apply the doctrine, even where these three elements are present, to prevent defeat of the ends of justice. (*Greenfield* v. *Mather* (1948) 32 Cal.2d 23 [194 P.2d 1]; *Jackson* v. *Jackson* (1967) 253 Cal.App.2d 1026 [62 Cal.Rptr. 121].)

Here, the RURESA judgment was unquestionably final. A final judgment has the effect of res judicata, even if it is wrong or unjust, if the merits of the claim are tried and determined (4 Witkin, Cal. Procedure, *supra,* § 168, p. 3310) or might have been urged, but were not, by one of

the parties (*Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 638 [134 P.2d 242]). The RURESA complaint concerned all child support arrearages and current child support; Esther "might have" contested William's defense. Thus, all the formal requirements of a determination on the merits were met.

Whether Esther was a party to the prior action, for res judicata purposes, is a similar question. As a general rule, all parties, and persons substantially identified with them in terms of legal interest, are bound. (4 Witkin, Cal. Procedure, *supra,* § 222, p. 3357.) Here, Esther signed the complaint that made her, formally, the plaintiff in the RURESA case. As such, she was nominally in control of the litigation.

It remains to be determined whether, under *Greenfield* v. *Mather, supra,* 32 Cal.2d 23, it was an abuse of discretion to deny res judicata effect to the RURESA judgment. In *Greenfield,* the Supreme Court said: "[I]n rare cases a judgment may not be res judicata, when proper consideration is given to the policy underlying the doctrine, and there are rare instances in which it is not applied. In such cases it will not be applied so rigidly as to defeat the ends of justice or important considerations of policy." (32 Cal.2d at p. 35.) The so-called *Greenfield* doctrine has been criticized. (4 Witkin, Cal. Procedure, *supra,* § 150, pp. 3295-3297.) It has been questioned, but not overruled, in a recent Supreme Court decision: *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 796 [126 Cal.Rptr. 225, 543 P.2d 593].

We conclude that this is a situation calling for application of the *Greenfield* doctrine. The conclusion that the merits of the issue were tried is unsatisfactory in view of the policy of "fair opportunity to litigate." (See 4 Witkin, Cal. Procedure, *supra,* § 168, p. 3310.) The RURESA does not contemplate the wife's actual presence at the proceedings; in fact, Esther was not present. ▮. The statute was designed specifically to improve and simplify mechanisms for enforcing the husband's duty to support, where the parents reside in different states. (6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 47, p. 4576.) Perhaps its major innovation is the "simple two-state proceedure" (9 U. Laws Ann. (master ed. 1973) p. 890) that allows the wife to remain in her own state while the public prosecutor in the husband's state attempts to enforce the husband's obligation of support.

For those cases in which the husband raises a defense, the act provides a means for the wife to litigate the issue. In such a case the court must,

on request of either party, continue the case for submission of her evidence. (Code Civ. Proc., § 1683.) ■ The provision contemplates that the prosecuting attorney "shall use the machinery of deposition and interrogatories" (9 U. Laws Ann., *supra*, Commissioners' Prefatory Note (1958) at p. 886) to get her evidence. ■ Here, the prosecutor did not use section 1683, and it does not appear that Esther was even aware that William was contesting the action. Thus, Esther's evidence on the issue of secreting her child was never heard. In substance, then, the merits were not "tried and determined" in any meaningful way.

Second, to withhold giving effect to Esther's nominal status as a party to the RURESA action accords well with the holding of the California Supreme Court in *Minton* v. *Cavaney* (1961) 56 Cal.2d 576 [15 Cal.Rptr. 641, 364 P.2d 473]. In *Minton,* respondents won a judgment against the owner of the corporation from which they had previously won an (unsatisfied) wrongful death award. The Supreme Court reversed, holding that " 'In order that [res judicata] should apply it is necessary that the one in whose favor or against whom the rules of res judicata operate participate in the control of the action and if the judgment is adverse, be able to determine whether or not an appeal should be taken. . . .' " (56 Cal.2d at p. 581, quoting Rest., Judgments, § 84, com. e.) Nominally, Esther was "in control" of the prior action; she was not a "nonparty." (See *Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 948 [119 Cal.Rptr. 139].) But the trial court understood the "party" in the RURESA case to be the State of Colorado, not Esther Hight. Esther exercised no control over the action, other than to sign a complaint under conditions suggesting that it was required of her by the Colorado public welfare authorities in order to qualify for aid. The RURESA permits the state to prosecute suits if it is paying support (Code Civ. Proc., §§ 1653, subd. (f), 1671). Esther was receiving public assistance in Colorado. The record suggests that she had no part in the request for dismissal or the failure to appeal. Her interests were apparently not considered when the district attorney failed to invoke the continuance procedure of section 1683 of the Code of Civil Procedure in order to obtain evidence contradicting William's defense.

Both "the ends of justice" and "important considerations of policy" would be defeated if res judicata were applied under these circumstances. Under the *Greenfield* doctrine, the trial court did not commit an abuse of discretion when it declined to give res judicata effect to the judgment in the RURESA case.

Appellant contends that the uncontradicted testimony of his younger son, Jerry, requires a finding that Jerry is emancipated. Leaving aside the question of whether emancipation affects the duty to make child support payments, the question of emancipation itself is one of fact. The record supports the trial court's finding that Jerry was "required to work to help maintain the family home because of the failure of [appellant] to make the support payments as ordered" and that Jerry "did not at any time become emancipated so as to excuse [appellant] from support."

Affirmed.

Caldecott, P. J., and Emerson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.