**Frances ACKERMAN, Appellee,**

v.

**Martin S. ACKERMAN, Appellant.**

**No. 578, Docket 81–7578.**

United States Court of Appeals, Second Circuit.

Argued Jan. 14, 1982.

Decided April 7, 1982.

Maurice Rosenberg, New York City (Frederick E. Sherman, Layton & Sherman, New York City, Laurence D. Rubin, Kaplan, Livingston, Goodwin, Berkowitz &

Selvin, Beverly Hills, Cal., of counsel), for appellant.

David N. Kaye, Szold & Brandwen, P.C., New York City (Joann M. Calderone, New York City, of counsel), for appellee.

Before OAKES and NEWMAN, Circuit Judges, and HAIGHT,* District Judge.

OAKES, Circuit Judge:

An intransigent husband seeks to avoid his support and property settlement obligations totaling in excess of $1 million. The argument is made that New York must give full faith and credit to a California judgment dismissing with prejudice his former wife's suit for accrued support, and must give no effect to a subsequent English judgment holding that the California judgment was not res judicata and that the husband was liable for both support and property payments. Finding no equities on behalf of the husband in his "flight from judgment," the United States District Court for the Southern District of New York, Abraham D. Sofaer, *Judge*, sitting in diversity, granted summary judgment to the wife for enforcement of the English judgment.[1] In a carefully reasoned opinion, 517 F.Supp. 614 (S.D.N.Y.1981), Judge Sofaer held that California would not give the California dismissal res judicata effect, nor would New York regard it as a judicial proceeding requiring full faith and credit. He held also that "[e]ven if the California dismissal were res judicata under California law and entitled to full faith and credit under New York law, it would be super[s]eded by the English judgment, which must be enforced pursuant to the principles of comity and the New York last-in-time rule." *Id.* at 623. We affirm on the basis that because under California law the California judgment would not be given preclusive effect, New York is free to enforce the English judgment.

---

* Of the Southern District of New York, sitting by designation.

1. Plaintiff sues also for legal fees in this and the English action and for damages incurred since the December 1976 filing of the English action.

## BACKGROUND

The parties entered into a separation agreement on March 5, 1971, which was incorporated, but not merged, into a judgment of divorce rendered by the New York Supreme Court in Nassau County on June 18, 1971. The settlement agreement provided that the husband would pay the wife, *inter alia*, for support and education of their children (Paragraph 4); for medical and dental expenses (Paragraph 5); for homeowner's insurance (Paragraph 6); for new automobiles and repairs and liability insurance thereon (Paragraph 7); $950,000 in settlement of estate and property rights, in installments of $45,000 per year through 1975, $75,000 per year in 1976 and 1977, $175,000 in 1978 and 1979, and $225,000 in 1980 (Paragraph 9); $3,750 per month for maintenance irrespective of remarriage (Paragraph 10); and attorneys' fees and expenses in actions to compel payment (Paragraph 18).

As the opinion below fully sets forth, 517 F.Supp. at 615–18, the wife brought suit in New York twice for breaches of the agreement, recovering a judgment for $4,870 in the first action and ultimately obtaining dismissal without prejudice of the second action. She also brought a quasi-in-rem action based on the husband's ownership of $120,000 worth of real property in California, in the Los Angeles County Superior Court on March 10, 1976, seeking to enforce the New York judgment for $4,870 and to recover approximately $45,000 for breaches of the provisions in the separation agreement for child support, medical and dental expenses, automobile payments, and maintenance (*i.e.*, Paragraphs 4, 5, 7, and 10). She did not claim damages in California for breach of Paragraph 9, the property settlement.

Upon learning that the husband had defaulted on $36,000 due under a $50,000

---

The district court directed entry of final judgment under Fed.R.Civ.P. 54(b), certifying that there was no just reason for delay, only on count one of plaintiff's complaint, the claim for enforcement of the English judgment.

mortgage on the California property and that he did not intend to appear in the California action, the wife decided to sue instead in England, where the husband had moved in 1974. In October 1976 and again in November and January the wife, acting through her father, told her California counsel to discontinue the California action. Counsel failed, however, to file a dismissal form with the clerk of the court, even though at this time, prior to the husband's filing of a cross-complaint, the wife could have obtained a dismissal without prejudice. *See* Cal.Civ.Proc.Code § 581.[2]

The wife filed suit against the husband in England in December 1976, serving him with process in London. She now sought the amount due on the property settlement in Paragraph 9, as well as the support due. The husband, however, at last appeared in the California action through counsel on January 11, 1977, filing an answer generally denying liability and a cross-complaint requesting that the wife be enjoined from pursuing the English action or her second New York action.

The husband's counsel refused to consent to termination of the California action without prejudice as the wife's counsel had suggested. The wife's counsel, without advising the wife, filed a dismissal form with boxes checked for dismissal of the "entire action," "with prejudice." The court clerk

did not indicate on the form the disposition of the request—though the place to do so was filled in, whited out, then crossed out—but at the bottom of the page wrote in the number "1" and the word "over." Meanwhile the husband's counsel had filed a dismissal form requesting dismissal of the "cross-complaint only," "without prejudice." The clerk numbered this form "2" and marked it "dismissal entered as requested on February 14, 1977." The district court surmised that "[t]he clerk may have meant to combine the two requests for dismissal and to dismiss the entire action without prejudice," 517 F.Supp. at 617, but a Los Angeles County deputy court clerk had stated in an affidavit submitted by the husband in the English action that the complaint was dismissed with prejudice, the cross-complaint was dismissed without prejudice, and the whole procedure was "consistent with the normal course of practice . . . and in keeping with applicable statutes and rules."

The husband sought to dismiss the wife's second New York action with prejudice and to dismiss or stay the English action on the ground that the California dismissal was res judicata. The New York Supreme Court instead granted the wife's motion to dismiss without prejudice. The Appellate Division affirmed, declining to decide whether the

**2.** Section 581 provides that a plaintiff may no longer unilaterally dismiss an action without prejudice once a defendant seeks affirmative relief by cross-complaint:

An action may be dismissed in the following cases:

1. By plaintiff, by written request to the clerk, filed with the papers in the case, or by oral or written request to the judge where there is no clerk, at any time before the actual commencement of trial, upon payment of the costs of the clerk or judge; provided, that affirmative relief has not been sought by the cross-complaint of the defendant, and provided further that there is no motion pending for an order transferring the action to another court under the provisions of Section 396b. If a provisional remedy has been allowed, the undertaking shall upon such dismissal be delivered by the clerk or judge to the defendant who may have his action thereon. A trial shall be deemed to be actually commenced at the beginning of the opening

statement of the plaintiff or his counsel, and if there shall be no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence.

. . . .

5. The provisions of subdivision 1, of this section shall not prohibit a party from dismissing with prejudice, either by written request to the clerk or oral or written request to the judge, as the case may be, any cause of action at any time before decision rendered by the court. Provided, however, that no such dismissal with prejudice shall have the effect of dismissing a cross-complaint filed in said action. Dismissals without prejudice may be had in either of the manners provided for in subdivision 1 of this section, after actual commencement of the trial, either by consent of all of the parties to the trial or by order of court on showing of just cause therefor.

California judgment was res judicata. *Ackerman v. Ackerman*, 60 A.D.2d 520, 521, 399 N.Y.S.2d 682, 683 (1st Dep't 1977). The husband's English motion was also denied and the High Court of Justice, Queen's Bench Division, affirmed.

The English action, which the husband continued to defend even though he had moved back to the United States, was tried between June 23 and July 1, 1980. The husband's defense was that the California dismissal barred the wife's recovery in the English action. Justice Boreham of the High Court of Justice examined relevant California law, on which he heard testimony from the parties' experts. He found that he was "very far from being satisfied" that California would find the dismissal a final adjudication, and that in any event California might well apply an equitable exception to the law of res judicata. Even if the California judgment were a final judgment, Justice Boreham found, res judicata would not apply to the property settlement in Paragraph 9 because that paragraph was not relevant to the causes of action sued upon in California. He awarded the wife $1,097,250, of which $1,012,550 represented damages on the property settlement, plus costs. The husband's appeal of this judg-

ment was dismissed for failure to post the required bond for costs.

The wife commenced this action in the New York State Supreme Court, New York County, on December 15, 1980. The husband removed to federal district court on the ground of diversity of citizenship. The parties cross-moved for summary judgment. Judge Sofaer denied the husband's motion. He found that the wife had raised three issues of fact with regard to the validity of the California judgment, which the husband argued was res judicata: first that her California attorney's dismissal of her suit with prejudice was unauthorized, second that the California court clerk's disposition of her and her husband's dismissal requests was not in strict compliance with statute, and third that California would likely apply the doctrine of equitable relief from res judicata in her case. 517 F.Supp. at 619–22.

Judge Sofaer then concluded that "New York Courts would probably not accord full faith and credit to the California dismissal," *id.* at 623, on the ground that New York would not regard as a "judicial proceeding" a dismissal with prejudice entered by a clerk, arguably improperly[3] and upon the unauthorized action of an attorney, without any ruling by a judge.[4]

---

**3.** The wife argued below and in the English action, as she argues on appeal, that the clerk did not comply strictly with his statutory authority under Cal.Civ.Proc.Code § 581, and therefore that the California judgment was void, *see Riley v. Superior Court*, 111 Cal. App.2d 365, 367, 244 P.2d 474, 475 (1941). She argues that the clerk had authority only to accept or reject the parties' dismissal forms, that the form her California attorney submitted was unacceptable because it requested dismissal of the "entire action" without the consent of the husband's attorneys, and that the clerk's dismissal of the complaint with prejudice and of the cross-complaint without prejudice thus constituted an unauthorized amendment of her request.

**4.** The district court noted that New York courts have refused to accord full faith and credit to foreign judgments they characterize as other than judicial proceedings within the meaning of the Full Faith and Credit Clause, citing *American Fidelity Fire Insurance Co. v. Paste-Ups Unlimited, Inc.*, 368 F.Supp. 219, 225 n.5 (S.D. N.Y.1974). That decision, citing *Atlas Credit Corp. v. Ezrine*, 25 N.Y.2d 219, 303 N.Y.S.2d

382, 250 N.E.2d 474 (1969) (cognovit judgment, entered on a warrant of attorney before a court clerk, is not entitled to full faith and credit), stated:

> At a minimum, New York requires a formal decision rendered in a controversy where the parties have been given notice of the proceedings with an opportunity to be heard; the exercise of discretion or judgment; and something more than merely "the act of the law, invoked by the parties, in executing [their] agreement." *Id.* at 230, 303 N.Y.S.2d at 391, 250 N.E.2d at 481.
>
> In short, New York has adopted as the definition of "judgment" "the determination ... pronounced by a competent judge or court, as the result of an action or proceeding instituted in such court, affirming that, upon the matters submitted for its decision, a legal liability does or does not exist." *Id.*

*American Fidelity*, 368 F.Supp. at 225–26. Judge Sofaer also noted that under the New York Civil Practice Law and Rules, claims may be unilaterally discontinued after a responsive pleading has been served only upon court order. 517 F.Supp. at 623.

Judge Sofaer went on to grant partial summary judgment to the wife on the basis of her English judgment, holding that "[e]ven if the California dismissal were res judicata under California law and entitled to full faith and credit under New York law, it would be super[s]eded by the English judgment," 517 F.Supp. at 623. Under New York law, he noted, the English judgment would be enforced under principles of comity. *See, e.g., Clarkson Co. v. Shaheen*, 544 F.2d 624, 629–30 (2d Cir. 1976) (Canadian judgment recognized as one from "a sister common law jurisdiction with procedures akin to our own"); *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 265 N.E.2d 739, 317 N.Y.S.2d 315 (1970). He noted also that the New York policy favoring enforcement of foreign judgments is especially strong in marital or family actions, *see* 517 F.Supp. at 624 (citing Siegel, Practice Commentary C5301:2, 7B McKinney's Consolidated Laws of New York Annotated at 487 (the Uniform Foreign Money-Judgments Recognition Act, N.Y.Civ.Prac.Law § 5301(b), in exempting judgments for support in matrimonial or family matters from the restrictions on enforcing foreign money judgments imposed by sections 5301–5309, is designed "to acknowledge their unique status and treatment and leave them to existing law, which is ... quite generous in New York")).

Judge Sofaer held that the English judgment would take priority over the California judgment under the last-in-time rule of *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 76–78, 60 S.Ct. 44, 49–50, 84 L.Ed. 85 (1939) (third forum must recognize judgment of second forum that refused to recognize judgment of first forum), which New York follows, *see, e.g., Ambatielos v. Foundation Co.*, 203 Misc. 470, 116 N.Y.S.2d 641 (Sup.Ct.1952) (conflict between two foreign judgments); *Perkins v. DeWitt*, 279 A.D. 903, 111 N.Y.S.2d 752 (1st Dep't 1952) (conflict between New York and foreign judgment). This rule, Judge Sofaer noted, follows from the propositions that one trial—in the second forum—of the issue whether the first forum's judgment was conclusive is enough, and that the party losing in the second forum should appeal that judgment, not relitigate the issue in the third forum. 517 F.Supp. at 625–26; *see Treinies v. Sunshine Mining Co.*, 308 U.S. at 77–78, 60 S.Ct. at 50. The husband in this case, however, "did not even attempt to pursue an appeal of the English judgment." 517 F.Supp. at 626.

Acknowledging that some scholars have criticized the application of the last-in-time rule to judgments by foreign forums,[5] Judge Sofaer examined the English court's

---

Notwithstanding that this is true under New York law, it is not clear to us that New York is free to characterize the dismissal in this case as not a judicial proceeding, given that California law treats a dismissal with prejudice as a final judgment, *see Fisher v. Eckert*, 94 Cal.App.2d 890, 212 P.2d 64 (1949), with res judicata effect, *see Gagnon Co. v. Nevada Desert Inn Inc.*, 45 Cal.2d 448, 455, 289 P.2d 466, 472 (1966). Even if the California clerk's entry of dismissal were void under *Riley v. Superior Court*, *see* note 3 *supra*, it might still have been a judicial proceeding, albeit one to which New York need give no effect because California would give it none.

In light of our holding below, however, we need not reach the question whether the district court was correct in concluding that New York courts would not regard the dismissal in this case as a judicial proceeding to which the Full Faith and Credit Clause applies.

5. The last-in-time rule is generally followed in the United States, *see, e.g., Porter v. Wilson*, 419 F.2d 254, 258–59 (9th Cir. 1969), *cert. de-*

nied, 397 U.S. 1020, 90 S.Ct. 1260, 25 L.Ed.2d 531 (1970), but the Restatement (Second) of Conflict of Laws § 114, Comment d (1971), cautions that "[i]t is uncertain whether the rule ... applie[s] to judgments rendered in a foreign nation." As Judge Sofaer pointed out, Professor (now United States Circuit Judge) Ruth Bader Ginsburg has criticized the New York holdings applying the last-in-time rule to foreign-country judgments on the grounds that a foreign nation's courts, unlike those of a sister state, are not necessarily obligated to accord full faith and credit to prior judgments, and that appeal does not lie to the United States Supreme Court as an impartial arbiter "to correct the second state's error, should it fail to give the first judgment the respect constitutionally due it." Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments*, 82 Harv. L.Rev. 798, 831–32 (1969). *See also* Smit, *International Res Judicata and Collateral Estoppel in the United States*, 9 U.C.L.A.L.Rev. 44, 46 n.13 (1962) ("It is clear that [the last-in-

impartiality and reasoning about the res judicata effect of the California dismissal, and found neither wanting in any respect. *Id.*

## DISCUSSION

Learned professional assistance was enlisted in this attempt at a legal tour de force to remake the husband, the author of a book entitled *Money, Ego, Power*, into a legal Harry Houdini, escaping all of his many unpaid obligations through the California clerk's dismissal. As the English court observed, however, giving res judicata effect to the California dismissal "would mean that the Plaintiff would never have had her opportunity to litigate and that all her remedies under an apparently handsome agreement would be barred everywhere and for ever." If the law is such that the husband in this situation is to prevail, then as Mr. Bumble said in *Oliver Twist*, it is "a ass, a idiot." We must examine it with great care nevertheless.

On appeal the husband argues that until superseded by another judgment entitled to full faith and credit, the California judgment retains the effect it would have in California. The English judgment, he contends, not being that of a sister state, is not constitutionally entitled to full faith and credit, nor to superseding effect under the last-in-time rule. The California dismissal with prejudice, the husband continues, was valid under California law,[6] and would have res judicata effect in California. It would thus preclude the wife's recovery on the claims she made for support, as well as her unalleged but assertedly nonseverable claims under the property settlement. In light of this preclusive California judgment, he concludes, the wife cannot enforce the English judgment.

■ It is clear, however, that if the California dismissal would not be given preclusive effect in California, it need not be given such effect in New York. The Constitution and federal law[7] entitle a judgment to no more faith or credit in the enforcing state than it would receive in the judgment state. *See, e.g., Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 270, 100 S.Ct. 2647, 2655, 65 L.Ed.2d 757 (1980); *Morris v. Jones*, 329 U.S. 545, 551, 67 S.Ct. 451, 455, 91 L.Ed. 488 (1947). And if New York need not give the California judgment preclusive effect, it is free to enforce the English judgment, and the question whether the English judgment supersedes the California judgment need not be reached. In short, if California would not give res judicata effect to the dismissal in this case, then the husband's arguments topple like a house of cards.

■ Having reviewed this issue independently, we have reached the same conclusion as the English court and the court below: this case is one of the "rare instanc-

---

time] rule can be applied to foreign judgments only after it has been established that the law of the second foreign forum recognizes the res judicata effect of prior foreign judgments").

Judge Sofaer, while stating that the views of Professors Ginsburg and Smit are not law in New York, found that their logic warranted consideration "of whether the English court showed sufficient respect for the California dismissal" and of whether the English court was "an impartial tribunal." 517 F.Supp. at 626. We agree with his conclusions that the English court was impartial and did show considerable sensitivity to California law. In view of our holding below, however, we do not reach the knotty question whether the last-in-time rule should apply when a foreign court is the second forum.

6. The husband also argues at length that because the wife somehow took advantage of the dismissal document, by using it in the English action to show that there was no California action pending, she is estopped from challenging its validity. We reject this argument, agreeing with Judge Sofaer that the wife did not in fact benefit from the dismissal document in the English action. 517 F.Supp. at 622.

7. The Full Faith and Credit Clause, U.S.Const. art. IV, § 1, provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." 28 U.S.C. § 1738 provides that the "Acts, records and judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of [the] State . . . from which they are taken."

es" in which the California courts would give equitable relief from the doctrine of res judicata under *Greenfield v. Mather*, 32 Cal.2d 23, 35, 194 P.2d 1, 8 (1948).[8]  Justice Boreham, after hearing expert academic testimony from both sides on the applicability of the *Greenfield* doctrine, concluded that the doctrine was "alive in California" to be "applied only in very special circumstances," and that he was "far from satisfied that it would not be applied" here. Judge Sofaer concluded that "[i]f the California courts are to apply the *Greenfield* doctrine in any case, it is likely that they would apply it here...."  517 F.Supp. at 622.  We agree, and therefore affirm the grant of summary judgment to the wife for enforcement of the English judgment.[9]

In *Greenfield*[10] the California Supreme Court wrote that in rare cases the doctrine of res judicata "will not be applied so rigidly as to defeat the ends of justice or important considerations of policy." 32 Cal.2d at 35, 194 P.2d at 8.  Over twenty years later, the Court declined to overrule *Greenfield* but noted that

> We consider the *Greenfield* doctrine of doubtful validity and it has been severely criticized.  (See 4 Witkin, [Cal.Proc. (2d ed. 1971)], Judgment, § 150, p. 3295, *et seq.*)  While we find it is unnecessary for our present purposes to reach the question of whether *Greenfield* itself should be directly overruled, we expressly hold that the rule of that case is inapplicable where, as here, the only possible basis for its implementation is founded on a

change in law following the original judgment.

*Slater v. Blackwood*, 15 Cal.3d 791, 796, 543 P.2d 593, 595, 126 Cal.Rptr. 225, 227 (1975). Some subsequent decisions have followed the holding in *Slater* on similar facts, *i.e.*, when a second lawsuit was brought on an old cause of action after a change in the law, *see, e.g., Smith v. Brovan*, 97 Cal. App.3d 19, 25, 158 Cal.Rptr. 515, 518 (1979), which is not the situation here.  Other subsequent decisions have declined to apply *Greenfield* because the parties seeking equitable relief had not demonstrated that application of res judicata would cause them injustice, *see, e.g., Carroll v. Puritan Leasing*, 77 Cal.App.3d 481, 489–90, 143 Cal. Rptr. 772, 778–79 (1978), which is also not the situation here.  In no California case has *Greenfield* been overruled, or the dictum in *Slater* been applied to foreclose equitable relief from res judicata.

Rather, California intermediate appellate courts have followed *Greenfield*, granting equitable relief from res judicata in marital or family actions.  In *Jackson v. Jackson*, 253 Cal.App.2d 1026, 62 Cal.Rptr. 121 (1967), decided before *Slater*, a husband was not permitted to avoid arrearages on a marital property settlement by interposing a prior erroneous judgment that the settlement was not merged in the divorce decree, a result the court said would have defeated the ends of res judicata by forcing the wife into further, duplicative litigation to obtain such a merger.

---

**8.** We accordingly do not reach the other two grounds on which the wife urges that the California dismissal has no preclusive effect, *i.e.*, that it was void as the product of unauthorized acts by her attorney and by the Los Angeles court clerk.

**9.** While it is true that Judge Sofaer's statements about the applicability of the *Greenfield* doctrine occurred in the context of denying the husband's motion for summary judgment, we do not read his opinion to preclude granting the wife's summary judgment motion on the basis that the California dismissal would not be res judicata under California law.  There are no material facts in dispute other than the "fact" of what the result would be under California law, which we have examined carefully.

**10.** The *Greenfield* case involved a husband who sought to interpose a prior judgment to bar his former wife's acquisition of part of her interest in a property settlement.  The court noted that the prior judgment had erroneously awarded the wife only half of a fund held by another court, even though a still earlier judgment had awarded her the whole amount of that fund. The court attributed this mistake to the prior court's failure to take any evidence on the true issues involved.  The court noted too that the prior judgment gave a windfall to the husband, and that declining to recognize the prior judgment would not injure any innocent third parties.  These equities, the court held, favored nonrecognition of the prior judgment.  32 Cal.2d at 34–35, 194 P.2d at 8.

In *Hight v. Hight*, 67 Cal.App.3d 498, 136 Cal.Rptr. 685 (1977), noting that *Greenfield* had been questioned but not overruled in *Slater*, the court disregarded the *Slater* dictum and concluded that "this is a situation calling for application of the *Greenfield* doctrine," 67 Cal.App.3d at 503, 136 Cal. Rptr. at 687. In *Hight* a wife living in Colorado and seeking support arrearages from her former husband in California was represented in absentia by a California district attorney, who failed to solicit any evidence from her that might have rebutted the husband's successful affirmative defense that she had frustrated his visitation rights. In a second action, which the wife brought personally in California, the court refused to give res judicata effect to the previous judgment in the husband's favor, noting that the merits of the affirmative defense were never meaningfully tried. A later case, citing *Hight*, noted that "[t]he *Greenfield* rule will be applied where the record shows the lack of a fair opportunity to litigate the issue of support." *Ruddock v. Ohls*, 91 Cal.App.3d 271, 281, 154 Cal. Rptr. 87, 91 (1979) (dictum) (holding that a settlement between parents was not res judicata of their child's right to litigate for support). This is in keeping with the general American rule favoring equitable relief from res judicata in cases in which "a party was deprived of an opportunity adequately to present his claim or defense." Restatement (Second) of Conflict of Laws § 115, Comment a, Comment e (1971). *See also* Restatement (Second) of Judgments ch. 5 *passim* (Tent. Draft No. 6, 1979).

Mrs. Ackerman surely had no more meaningful an opportunity to litigate in California than did Mrs. Hight. Mrs. Ackerman's California action involved only quasi-in-rem jurisdiction based on property worth much less than she thought when she filed her complaint. She sued only for past due support obligations, not for the much larger amount owed under the property settlement. The husband's attorneys advised her attorneys that the husband did not intend to appear in or defend the action or to file a responsive pleading. By the time she acquired personal jurisdiction over the husband in England, where he had moved of his own volition, he had still not answered the wife's California complaint, and the statutory time for answering, Cal.Civ.Proc. Code § 412.20(a)(3), had expired. In these circumstances she had no incentive to litigate. Nonetheless she was deprived, by the neglect of her California counsel over several months to follow her instructions, of the opportunity to discontinue this dormant action without prejudice. Finally, the clerk's disposition of the requests for dismissal was on its face ambiguous. These circumstances seem to us sufficiently exceptional to warrant application of the *Greenfield* doctrine. We note that it would be especially unjust to preclude her claim under the property settlement,[11] on which there were no pleadings or evidence in the California action, see *Greenfield*, 32 Cal.2d at 34, 194 P.2d at 8, and which was adjudicated fully for the first and only time in the English action.

California would not give res judicata effect to the dismissal here. Therefore New York, in giving the dismissal full faith and credit, need not give it preclusive effect. Thus no antecedent judgment stands in the way of enforcing the English judgment, to which Judge Sofaer's decision below gave full effect.

---

11. Although the husband argues that the equities are not in the wife's favor because she remains free to recover on the original divorce judgment, such a recovery would not include the property settlement. The divorce decree in this case directs the husband to pay spousal support and maintenance and child support, maintenance, and education as required by the separation agreement. It makes no reference to the property settlement. Thus while the divorce court retains jurisdiction to enforce or to modify the support provisions, *see McMains*

*v. McMains*, 15 N.Y.2d 283, 206 N.E.2d 185, 258 N.Y.S.2d 93 (1965), it has no jurisdiction over the vast bulk of the award the English court gave the wife and the court below enforced.

In light of our holding that California would not treat the dismissal here as res judicata of any of the wife's claims, we need not reach the husband's argument that the dismissal was res judicata of even unalleged claims under the property settlement, which he contends were not severable from the support claims actually alleged under the same contract.

Judgment affirmed for the reasons stated in this opinion.