**In re Martin S. ACKERMAN, Debtor.**

**Martin S. ACKERMAN, Plaintiff,**

v.

**Frances ACKERMAN and Chemical Bank, Defendants.**

**Bankruptcy No. 82 B 12111. Adv. No. 83–5124–A.**

United States Bankruptcy Court, S.D. New York.

March 18, 1983.

Barst, Mukamal & Babitt, New York City, for debtor.

Szold & Brandwen, New York City, for defendants.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Martin Ackerman, ("Martin" or "Debtor") a chapter 7 debtor, has instituted an adversary proceeding to determine the dischargeability of a debt arising from a separation agreement with his former wife, Frances Ackerman ("Frances" or "Defendant"). The debtor seeks a preliminary injunction, pending the determination of dischargeability, against Frances's efforts to collect on a judgment for a portion of the debt. Martin claims that the judgment was for the enforcement of a contract debt and not for alimony, support or maintenance, and as such, the judgment is a dischargeable debt under Bankruptcy Reform Act ("Code") section 727 and, further that the debt falls within the purview of the section 362(a) automatic stay provision.

Frances, in turn, argues that at least part of the judgment obtained in federal court is for alimony, support or maintenance which renders the debt non-dischargeable under section 523(a)(5) and thus exempt from the section 362 stay of any collection efforts. Accordingly, Frances argues that she should not be enjoined from enforcing that part of her judgment that is for non-dischargeable debt. Extensive papers have been submitted and a hearing was held on February 4, 1983. For reasons stated below, the preliminary injunction request is granted.[1]

---

1. This Court finds that this proceeding "to determine dischargeability of particular debts" is not a "related proceeding" as defined in the Emergency Bankruptcy Rule I (S.D.N.Y. Dec. 21, 1982). Therefore, under Code section 105 and Bankruptcy Rule 765, this Court has juris-

*Background Facts*

Frances and Martin were married in 1954. On March 5, 1971, they entered into a separation agreement ("Agreement"). Paragraph 9 of the Agreement provided for a payment by Martin to Frances of $950,000 over 10 years in settlement of her "estate and property rights." Paragraph 10 provided for Frances's "support and maintenance" in the amount of $3,750 per month, irrespective of remarriage. On June 21, 1971, a Judgment for Divorce was entered by the New York Supreme Court, Nassau County, which incorporated but did not merge the separation agreement.

In December 1976, Frances brought suit in London, England, to enforce the "property" and the "support" provisions of the separation agreement. On July 1, 1980, the English High Court of Justice entered a judgment ("English Judgment") for Frances in the amount of $1,097,250.00. Frances then came to New York to enforce her English judgment. On July 3, 1981, the Federal District Court in *Ackerman v. Ackerman,* 517 F.Supp. 614 (S.D.N.Y.1981) (J. Sofaer), entered a judgment ("Federal Judgment") of $1,097,250.00 based on the English judgment. On April 7, 1982, the U.S. Court of Appeals for the Second Circuit affirmed Judge Sofaer's decision. *Ackerman v. Ackerman,* 676 F.2d 898 (2d Cir. 1982).

On October 27, 1982, Frances commenced a suit in New York Supreme Court, Nassau County, to hold Martin in contempt for his alleged failure to abide by an earlier order of that same court, dated June 30, 1982, directing Martin to post a $45,000.00 bond to secure payment of the monthly support payments and to pay $9,080.00 in attorney's fees. Five days later, Martin filed his petition in bankruptcy. The contempt proceeding was stayed by reason of Martin's bankruptcy.

On January 20, 1983, Frances, acting on the theory that under the bankruptcy law she had the right to attempt to recover amounts owed for alimony, support or maintenance so long as the property sought

from the bankrupt was non-estate property, obtained an execution from the court clerk of the Southern District of New York, against Martin's property for the sum of $84,700.00. The next day, Frances caused the U.S. Marshal to serve a levy on the Chemical Bank where Martin had $4,400 in his bank account.

Martin commenced this adversary proceeding on February 1, 1983 to, *inter alia,* enjoin Frances from taking action to enforce the Federal Judgment and for a determination that the Federal Judgment is dischargeable. Pending determination of the adversary proceeding, Martin seeks a preliminary injunction to stay Frances's efforts to execute on the Federal Judgment. The parties have consented to a stay until this preliminary injunction issue is decided, thus obviating a need for a temporary restraining order.

*Discussion*

The standard in the Second Circuit for the issuance of a preliminary injunction requires movant to show

> possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Caulfield v. Board of Education of the City of New York,* 583 F.2d 605, 610 (2d Cir. 1978); *see Jackson Dairy Co. v. H.P. Hood, Inc.,* 596 F.2d 70, 72 (2d Cir.1979); *Friarton Estate Corp. v. City of New York,* 681 F.2d 150, 152 n. 2 (2d Cir.1982).

This Court holds that Martin has satisfied the "possible irreparable injury" and "sufficiently serious questions" requirements. The Court will address the "sufficiently serious questions" requirement first because that discussion bears, to some degree, upon the "possible irreparable harm" requirement, which is discussed next. The Court will conclude with an examination of the "balancing of the hardships" requirement.

diction to hear this matter and is empowered to order the relief requested.

### I. *Is there a sufficiently serious question?*

The issue to be resolved in this underlying adversary proceeding is whether part, if not all, of the debt resulting from the Federal Judgment is alimony, support or maintenance and, therefore, non-dischargeable. This is a sufficiently serious question going to the merits of the case, to be determined pursuant to the applicable law and, if necessary, an inquiry into the circumstances surrounding the agreement.

The Court notes that the Second Circuit Court of Appeals decision affirming Judge Sofaer's decision characterizes at least part of the $1,097,250.00 judgment as for support: "An intransigent husband seeks to avoid his *support* and property settlement obligations." 676 F.2d at 899 (emphasis added). Further, referring to the English judge who entered judgment for Frances, the Second Circuit said: "He awarded the wife $1,097,250.00 of which $1,012,550 represented damages on the property settlement plus costs." Reading these two statements together, this Court would not be unreasonable in inferring that the remaining $84,700 is for support. However, the Second Circuit Court never expressly stated that the $84,700 portion of the Federal Judgment was for support. Therefore, despite those two Second Circuit Court statements, the question of whether any part of the Federal Judgment is for alimony, maintenance or support is an open question going to the heart of the case on dischargeability.

More importantly, this Court must determine whether the "support" references in the Second Circuit opinion are indeed to be construed as alimony, maintenance or support for purposes of the Bankruptcy Code. As the District Court in Tennessee has recently held: "To determine whether a given debt is exempt from discharge under section 523(a)(5), the bankruptcy court must look to the actual nature of the debt, for '[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.'" *In re Nelson, II* 20 B.R. 1008, 1010 (D.C.M.D.Tenn.1982), *citing* H.R.Rep. No.

95–595, 95th Cong. 1st Sess. 264, (1977) U.S. Code Cong. & Admin.News 1978, p. 5787; *See also In re Lineberry,* 9 B.R. 700 (Bkrtcy. W.D.Mo.1981), *In re Eisenberg,* 18 B.R. 1001 (Bkrtcy.E.D.N.Y.1982).

The Court finds that this issue of dischargeability is serious, going to the merits of the underlying action. Resolution after a full hearing is appropriate. The preliminary injunction standard of "sufficiently serious questions going to the merits" is met.

### II. *Irreparable Injury*

"The general function of a preliminary injunction being to maintain the status quo pending determination of the action on its merits, . . . a showing of actual or threatened injury must be demonstrated." *In re Poole,* 15 B.R. 422, 432 (Bkrtcy.N.D.Ohio, W.D.1981).

Assuming, *arguendo,* that the preliminary injunction is not granted, the $4,400 in Martin's Chemical account would be turned over to Frances, along with as many other assets to satisfy the $84,700 judgment as can be found. Yet, if the Court subsequently finds that the debt was not exempt from the automatic stay, the plaintiff will have suffered irreparable injury. *See generally 2 Collier on Bankruptcy* ¶ 105.02, at 105–5 to 105–6 (15th ed. 1982). This injury could manifest itself in a number of ways. The immediate consequence of a denial of the preliminary injunction would be to deprive Martin of the money in his bank account. In view of the Code policies of enabling the debtor to temporarily hold off his creditors and to promote a fresh start, H.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), depriving him of these rights afforded by the Code may very well constitute irreparable injury. Moreover, if the injunction is not granted and the Court later finds in favor of debtor, he will be confronted with the considerable time and expense of attempting to recover his funds. This too, is against the Code's policy of giving the debtor a fresh start.

Additionally, the possibility exists that if the Chemical account is levied upon, then

the post-petition creditor's attempts to amass assets would be frustrated, resulting, in turn, in potential embarrassment to the debtor.

Accordingly, this Court finds that Martin has met the "possible irreparable injury" requirement.[2]

### III. *Balance of Hardships*

Martin must show that the harm he would suffer if the injunction is not granted is decidedly greater than the harm the enjoined party would suffer if the preliminary injunction is granted. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568, 569 (2d Cir.1981); *see also In re Poole,* 15 B.R. at 433.

■ The possible harm that could befall Martin has already been discussed. On the other side of the balance, Frances's hardship would consist of a relatively short delay while the Court hears the merits of the case, with no frustration of her rights. This Court finds that because the possible irreparable harm that Martin might suffer is greater than any hardship a relatively brief delay will cause Frances, the balance of the hardships between these two parties tips decidedly in favor of the movant.

In sum, this Court finds that Martin has met the required standard for issuance of a preliminary injunction. The preliminary injunction is hereby granted.

It is so ordered.

---

**2.** The Court notes that the resolution of this issue in Martin's favor is based solely upon the assumption that the debt is dischargeable and that the automatic stay applies. Martin has not shown a likelihood of success on the merits of this case, he has only shown that there is a serious question going to the merits.